STANDARD OIL COMPANY OF INDIANA *v.* STATE OF MISSOURI ON THE INFORMATION OF HADLEY, ATTORNEY GENERAL, SUCCEEDED BY MAJOR.

REPUBLIC OIL COMPANY *v.* SAME

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

Nos. 47, 48. Argued November 8, 9, 1911.—Decided April 1, 1912.

It is, essential to the validity of a judgment that the court rendering it have jurisdiction of the subject-matter and of the parties; but it is for the highest court of a State to determine its own jurisdiction and that of the local tribunals.

Where the constitution of a State gives to its highest court the power

to issue writs of *quo warranto* and to hear and determine the same, judgment of ouster and fine entered by that court implies that it had jurisdiction to so decide and enter judgment and is conclusive upon this court whether the judgment is civil or criminal or both. *Standard Oil Co.* v. *Tennessee*, 217 U. S. 420.

Under due process of law one is entitled to notice and opportunity to be heard, and the notice must correspond to the hearing and the relief must be appropriate to the notice and the hearing.

Even a court of original general jurisdiction, civil and criminal, cannot enter a judgment beyond the claim asserted. It would not be due process of law.

*Quære:* Whether under general rules, information in the nature of *quo warranto* is a civil, or criminal, proceeding, and whether under general allegations of misuse, with only a prayer for ouster, a fine may be imposed in those jurisdictions where *quo warranto* has ceased to be a criminal proceeding.

Whatever the rule elsewhere, in Missouri a corporation may in *quo warranto* be subjected to a money judgment, whether in nature of fine or damages for breach of implied contract not to violate its franchise.

The prayer for relief is not a part of the notice guaranteed by the due process clause of the Constitution. The facts state the limit of the relief.

It is not a denial of due process of law for a court having jurisdiction to determine *quo warranto* and to enter judgment for a fine because there is no statute fixing the maximum penalty.

The power to fine reposed in a court of last resort is not unlimited, but is limited by the obligation not to impose excessive fines.

Right of appeal is not essential to due process of law, and the legislature may determine where final power shall be lodged and litigation cease. *Twining* v. *New Jersey*, 211 U. S. 111.

If due process has been accorded as to notice and opportunity to be heard, it is not for this court to determine whether error has been committed in construction of statute or common law.

If the judgment of the state court is not void, this court cannot consider collateral and non-Federal questions.

A corporation tried under information in the nature of *quo warranto* for combination in restraint of trade and sentenced to ouster and fine is not denied equal protection of the law, because corporations prosecuted under the anti-trust statute of the State would not be subjected to as severe a penalty.

The highest court of Missouri having held that *quo warranto* for mis-

user can be maintained against a corporation for entering into a combination in restraint of trade, the validity or invalidity of the anti-trust statute of that State has no bearing on the subject.

If the judgment of the state court cannot be reversed on the constitutional ground, it cannot be modified or amended by this court.

This court has no right to assume that a state statute will be so applied as to interfere with the constitutional right of a corporation to carry on interstate business.

218 Missouri, 1, affirmed.

WRIT of error to a judgment of ouster and fine against plaintiffs in error in original *quo warranto* proceedings in the Supreme Court of Missouri.

The Missouri Anti-trust Act (Rev. Stat. of 1899, §§ 8968, 8971) provides that any person or corporation which shall form a combination in restraint of trade shall be deemed guilty of a conspiracy to defraud, and on conviction shall be subject to a penalty of not less than $5 nor more than $100 per day for each day the combination continues, and in addition the guilty corporation shall have its franchises forfeited.

In April, 1905, while this act was in force, the Attorney General filed an information in the nature of a writ of *quo warranto* against the Standard Oil Company and the Republic Oil Company, foreign corporations, holding licenses to do business in Missouri, and the Waters-Pierce Oil Company, a domestic company, alleging that between the           day of           1901, and March 29, 1905, they had formed and maintained a combination to prevent competition in the buying, selling and refining oil to the great damage of the people of Missouri.

The information contained no reference to the Anti-trust Act further than was involved in the allegation that "by reason of the premises, said respondents, . . . grossly offended against the laws of the State, and wilfully and flagrantly abused and misused their . . . franchises . . . and their acts . . . constitute a

wilful and malicious perversion of the franchise granted the said corporations . . . Wherefore, your Informant, prosecuting in this behalf for the State of Missouri, prays" that each of the defendants be ousted of their said corporate franchises and license to do business under the laws of the State.

The defendants answered, denying all the allegations of the petition and moving to dismiss on many grounds not material to be considered here. The case was referred to a commissioner to take testimony and report findings of fact and conclusions of law.

While the case was under consideration the anti-trust statute was amended in March, 1907, so as to provide that if any corporation should be found guilty of a violation of the provisions of the act its charter or license should be forfeited, and the court might also forfeit any or all of its property to the State, or cancel its right to do business, or the court might assess a fine. It was provided that the act should not operate to release any penalty, forfeiture or liability already incurred.

After the passage of this amendment, making new and increased penalties for a violation of the anti-trust statute, the commissioner made his report, finding (May 24, 1907), against the defendants on the law and the fact. On June 22, 1907, the Republic Oil Company filed with the Secretary of State, in statutory form, a notice of its withdrawal from the State. On October 23, 1907, the fact of this withdrawal was brought to the attention of the court, and a motion was made that the case be abated so far as the Republic Oil Company was concerned. The motion was overruled, and later the court found that each of the defendants had entered into a combination in restraint of trade and prevented and destroyed competition. And it was adjudged that the defendants had each forfeited their right to do business, and they were each ousted of any and all right and franchise and fined

$50,000. In view of the capital of the company and the amount of profits that had been made during the period of the combination, some members of the court expressed the opinion that the fine should be $1,000,000.

A motion for rehearing was denied. The Waters-Pierce Oil Company paid the fine and complied with conditions, by virtue of which it was permitted to continue to do business in the State. The other two defendants brought the case here.

It is alleged that—

(b) "The court held that this was a civil proceeding, and that it had no criminal jurisdiction. It then, in addition to an ouster, adjudged that this respondent should pay a fine of $50,000. This fine was at least the exercise of criminal jurisdiction in an original proceeding, which was beyond the court's power and jurisdiction. The court thereby takes from the respondent its property without due process of law, discriminates against respondent, and refuses to accord to it the equal protection of the law, all of which is contrary to the Fourteenth Amendment to the Constitution of the United States."

There are various assignments of error challenging the constitutionality of the anti-trust statute, on the ground that it deprived defendants of their property without due process of law and interfered with interstate commerce. It was also claimed that the defendants were denied the equal protection of the law, in that in forfeiting their franchise and imposing a fine of $50,000, without a jury trial, a different procedure had been adopted and a different judgment entered from that which could have been rendered on conviction by a jury for violation of the anti-trust statute.

The defendants (now plaintiffs in error) sought first a reversal of the judgment of the Supreme Court of Missouri, and, in the alternative, a modification of the judgment.

To this end attention was called to the fact that the plaintiffs in error were parties in the case of *United States* v. *Standard Oil Company et al.* They pray that the judgment herein be modified so as to provide that it should not be held to conflict with any decree entered in that equity cause so far as concerned property in Missouri belonging to plaintiffs in error.

It was also urged that the statute making it a felony for any person to sell or deal in articles manufactured by a corporation whose license had been forfeited, would operate to destroy the value of the plaintiff's property in Missouri, and would in effect prevent them from engaging in interstate commerce. They moved that the judgment be modified here so as to provide against any such result.

*Mr. Frank Hagerman,* with whom *Mr. Alfred D. Eddy* and *Mr. Robert W. Stewart* were on the brief, for plaintiffs in error:

A judgment of ouster, coupled with a fine of $50,000, did not accord due process or the equal protection of the law. The cases below were civil, and distinguished from criminal. Const. of Missouri, Art. 6, §§ 2, 3, 22, 31. In Missouri the jurisdiction of the Supreme Court in *quo warranto* is original, civil, as distinguished from criminal, and there is no criminal jurisdiction except such as is appellate. *State* v. *Vallins,* 140 Missouri, 523, 535; *State* v. *Loan Company,* 142 Missouri, 325, 335; *Ames* v. *Kansas,* 111 U. S. 449, 461.

The cases, until judgment, proceeded upon the theory that they were wholly civil in their nature and no suggestion at any time was made by anyone that the respondents could be fined.

When a judgment was finally rendered against each respondent for an ouster and also for a fine of $50,000, there was a clear attempt to exercise the criminal power

of a court of justice; this too by a court which had no original criminal jurisdiction in a proceeding civil in its nature, and upon an information which asked no relief of a criminal nature and none in the way of an imposition of a fine. See § 2396, Rev. Stats., Missouri, 1899; *Kansas City* v. *Clark*, 68 Missouri, 588; 4 Black. Com. 5; *Kentucky* v. *Denison*, 24 How. 66.

Theretofore the power to impose a fine had been exercised, *State* v. *Armour Packing Co.*, 173 Missouri, 356, 393, only as an incident to the judgment of ouster, *i. e.*, the ouster was adjudged unless, as in the case of a remittitur of excessive damages, the defendant voluntarily elected to pay a sum of money called a fine. If the fine was not paid, it was neither due nor collectible, but the defendant was ousted of its franchises. *State* v. *Delmar Jockey Club*, 200 Missouri, 34, 69, 74.

At common law, no fine in a substantial sum could be imposed. *Ames* v. *Kansas*, 111 U. S. 449, 461; 3 Black. Com. 263; *The King* v. *Francis*, 2 T. R. 484; Bac. Ab., Title Information D; 2 Kyd on Corporations, 439.

In Missouri the common law so far as it authorized a fine in any case in excess of $200 was never adopted; see §§ 4151, 4152, Rev. Stats., 1899.

The Fourteenth Amendment accords to the defendant the right to due process and the equal protection of the law. The respondents had paid the statutory tax upon their capital and were granted the right to do business in Missouri for the remainder of their corporate existence, Rev. Stat., Missouri, 1899, §§ 1024, 1025, the same as if they were domestic corporations. To treat them, in a civil suit, which asked no such relief, as criminals and fine each of them $50,000, by an exercise of original criminal jurisdiction, upon the court's own suggestion, after the submission of the case and when the judgment was entered, was not due process of law, because at the threshold to that protection is the question of jurisdiction. If that

does not exist, there is no due process. *Twining* v. *New Jersey*, 211 U. S. 78, 111; *Scott* v. *McNeal*, 154 U. S. 34, 46; *Bell* v. *Bell* 181 U. S. 175, 178; *Andrews* v. *Andrews*, 188 U. S. 14.

The judgment of the court below did not accord the equal protection of the law, because when rendered it was for both ouster and fine. *Gulf &c.* v. *Ellis*, 165 U. S. 150, 154; *Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 79; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 559; *Southern Ry. Co.* v. *Green*, 216 U. S. 400.

*United States* v. *Standard Oil Co.*, 173 Fed. Rep. 177; *S. C.*, 221 U. S. 1, involved the question of whether there had been a violation of the Sherman Anti-trust Act by the Standard Oil form of organization and method of conducting business. The Sherman Act does not, in substance, differ from the statutes of Missouri as construed below, further than that one applies to interstate and the other to state transactions. The same facts which adjudged guilt below were here held to establish guilt under the Sherman Act. To prove the Government's case, all the evidence offered below in the Missouri case was, in fact, offered therein; the same reasons for a decree and judgment were given by both state and Federal courts. In the case under the Sherman Act the defendants were given a fixed time in which to reorganize so as to avoid the consequences which now confront them. When the reorganization takes effect, the trust will be dissolved and the existing evils destroyed. As the organization in both cases made guilt, the reorganization will make clean. Hence if that reorganization takes place, as this court has heretofore decided would be proper, no objection can be made of a further violation of the State law by reason of the original reorganization.

The large investments in Missouri are of great importance and entitled to serious consideration. The Standard Oil Company of Indiana was wholly owned by the Stand-

ard Oil Company of New Jersey. Upon reorganization
its stock will be distributed to the individual stockholders
of that company. Not so with the Waters-Pierce Com-
pany.

In case of absolute ouster, the consequences are fear-
ful. If there be a literal construction and enforcement
of § 8972, Rev. Stat., Missouri, 1899, and §§ 8969 and 8975,
Laws of Missouri, 1907, pp. 379, 380, the property becomes
practically confiscated, and any person dealing therewith
a felon.

The judgment of ouster and a fine was clearly wrong
as to the Republic Oil Company which voluntarily with-
drew from the State. The action should, as to it, there-
fore, be simply abated at its costs.

The Republic Oil Company having withdrawn from the
State, thereby gave to informant, in substance, the entire
relief sought, which was solely exclusion from the State.
To thereafter retain the case and, without any claim for
such relief, or intimation before judgment that it could
be granted, adjudge against that company a fine of
$50,000, was clearly the exercise of criminal jurisdiction in
an original civil proceeding. Neither the common law,
statute nor constitution so authorized.

The effect of the judgment of ouster is confiscation.
Under § 8972 (Rev. Stats. of Missouri, 1899) and §§ 8969,
8975 (Laws of Missouri, 1907, pp. 379, 380), the obligation
of a contract is impaired and the equal protection of the
law denied. It needs no argument to demonstrate that
these sections do not accord the equal protection of the
law.

Neither an offending corporation nor its successor or
assign, to whom it may sell its plant, under the literal
reading of the statute may in the State deal in a commodity
made by it. No person may, in the State, deal in any
commodity made by such corporation, its successor or
assign. Individuals and partnerships engaged in the

same business and alike guilty of the same act and of a violation of the same statute, cannot be so punished. Their property receives no such blight. According to previous decisions, the illegality of such discrimination is too clear to admit of discussion. *Gulf &c. Railway Co.* v. *Ellis,* 165 U. S. 150, 154; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 559; *Southern Ry. Co.* v. *Green,* 216 U. S. 400.

Section 8972 denies freedom in making contracts. *Allgeyer* v. *Louisiana,* 165 U. S. 578, 589; *Holden* v. *Hardy,* 169 U. S. 366, 390; *Lochner* v. *New York,* 198 U. S. 45, 53; *Adair* v. *United States,* 208 U. S. 161, 172, 173.

The statute is not one of exclusion; it applies alike to all corporations, domestic and foreign, and therefore cannot be upheld upon the ground of being a condition to a foreign corporation entering the State or remaining therein. *Carroll* v. *Greenwich Insurance Co.,* 199 U. S. 401, 409.

So the Constitution of the United States is a protection against the act of the State regardless of the form which it takes or method it is to pursue. It may be by judgment of a court or come into existence for the first time by the effect to be given to such judgment. *Terre Haute &c. R. Co.* v. *Indiana,* 194 U. S. 579, 589; *Attorney General* v. *Lowry,* 199 U. S. 233, 239; *C., B. & Q. R. Co.* v. *Illinois,* 200 U. S. 561, 580; *West Chicago St. R. Co.* v. *Illinois,* 201 U. S. 506, 519, 520.

Here the court below enforced its own penalty of ouster for an abuse of a corporate privilege.

The judgment of ouster as entered and especially as it is to be enforced under § 8972, Rev. Stat. of Missouri, 1899, and § 8975, Laws of Missouri, 1907, 380, unwarrantably interferes with the right to do interstate business and hence it violates § 8 of Article I of the Constitution of the United States. *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1; *Pullman Co.* v. *Kansas,* 216 U. S.

56; *International Text Book Co.* v. *Pigg,* 217 U. S. 91. The language of the judgment not only revokes the license, but also recites that the respondents are "hereby ousted of any and all rights accorded to them under the laws of this State from doing business in this State."

The judgment of ouster as written should not stand. If not absolutely reversed, it should at least be modified.

The statute, for the violation of which there was an ouster, was, prior to the trial, repealed, and it was not due process of law to enforce it. *State* v. *Centerville Bridge Co.,* 18 Alabama, 678, 681; *In re Franklin Telegraph Co.,* 119 Massachusetts, 449.

*Mr. Elliott W. Major,* Attorney General of the State of Missouri, and *Mr. Charles G. Revelle,* for defendants in error.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

The Standard Oil Company and the Republic Oil Company by this writ of error seek to reverse a judgment of ouster and fine of $50,000, entered against each of them in original *quo warranto* proceedings by the Supreme Court of Missouri, contending that they are thereby deprived of property without due process of law and denied the equal protection of the law.

The briefs and arguments for the defendants were addressed mainly to the proposition that the fine of $50,000 was a criminal sentence in a civil suit and void because beyond the jurisdiction of the court, and, for the further reason, that the pleadings and prayer gave no notice which would support such a sentence.

1. It is, of course, essential to the validity of any judgment that the court rendering it should have had jurisdiction, not only of the parties, but of the subject-

matter. *Chicago, B. & Q. Ry. Co.* v. *Chicago,* 166 U. S.
226, 234, 247. But it is equally well settled that it is
for the Supreme Court of a State finally to determine its
own jurisdiction and that of other local tribunals, since
the decision involves a construction of the laws of the
State by which the court was organized. In this case
the constitution of Missouri declared that "the Supreme
Court shall have power to issue writs of *habeas corpus, quo
warranto,* certiorari and other remedial writs, and to
hear and determine the same." Its decision and judg-
ment necessarily imply that under that clause of the
constitution it had jurisdiction of the subject-matter and
authority to enter judgment of ouster and fine in civil
*quo warranto* proceedings. That ruling is conclusive upon
us regardless whether the judgment is civil or criminal
or both combined. *Standard Oil Co.* v. *Tennessee,* 217
U. S. 413, 420.

2. The Federal question is whether, in that court,
with such jurisdiction, the defendants were denied due
process of law. Under the Fourteenth Amendment they
were entitled to notice and an opportunity to be heard.
That necessarily required that the notice and the hearing
should correspond, and that the relief granted should be
appropriate to that which had been heard and determined
on such notice. For even if a court has original general
jurisdiction, criminal and civil, at law and in equity, it
cannot enter a judgment which is beyond the claim as-
serted, or which, in its essential character, is not respon-
sive to the cause of action on which the proceeding was
based.

"Though the court may possess jurisdiction of a cause,
of the subject-matter, and of the parties, it is still limited
in its modes of procedure, and in the extent and character
of its judgments. It must act judicially in all things,
and cannot then transcend the power conferred by the
law. If, for instance, the action be upon a money demand,

the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. . . . The judgments mentioned, given in the cases supposed, would not be merely erroneous: they would be absolutely void; because the court in rendering them would transcend the limits of its authority in those cases." *Windsor* v. *McVeigh*, 93 U. S. 274, 282. See also *Reynolds* v. *Stockton*, 140 U. S. 254, 265–268. *Barnes* v. *Railway*, 122 U. S. 1, 14.

The defendants claim that the present case is within this principle—that the judgment for a fine of $50,000—which some of the Missouri court thought should have been a million dollars—was not only a criminal sentence in a civil suit, but beyond the issues and the prayer for relief in the Information—and therefore void as having been in substance entered without notice and opportunity to be heard. This raises the old question whether Information in the nature of *quo warranto* is a civil or a criminal proceeding, and the further question whether, under general allegations of misuser in an Information with only a prayer for ouster, a fine may be imposed in those jurisdictions where *quo warranto* has ceased to be a criminal proceeding. The uncertainty as to the relief that may be granted in such case arises from the fact that at one time the proceeding was wholly criminal and those guilty of usurping a franchise were prosecuted by Information instead of by Indictment, and punished both by judgment of ouster and by fine. But in England before the Revolution, and since that date in most of the American States, including Missouri, *quo warranto* has been resorted to for the purpose of trying the civil right, and determining

whether the defendant had usurped or forfeited the franchise in question. After this method of procedure began to be used as a form of action to try title, it was inevitable that the civil feature would tend to dominate in fixing its character for all purposes. But the discussion as to the nature of such writs and the character of the judgment that could be entered, though not controlled by their use (*Coffey* v. *County of Harlan*, 204 U. S. 659, 664; *Huntington* v. *Attrill*, 146 U. S. 657, 667; *Boyd* v. *United States*, 116 U. S. 616, 634), has been prolonged by the retention of the words Information, Prosecute, Guilty, Punish, Fine—survivals of the period when the writ was a criminal proceeding in every respect.

In some jurisdictions the writ is still treated as criminal both in the procedure adopted and in the relief afforded. *State* v. *Kearn*, 17 R. I. 391, 401. But there are practically no decisions which deal with the nature and amount of the fine which can be entered, in States where, as in Missouri, *quo warranto* is treated as a purely civil proceeding. The references to the subject both in text-books and opinions are few and casual. They usually repeat Blackstone's statement (3 Comm. 262) that the writ is now used for trying the civil right, "the fine being nominal only." *Ames* v. *Kansas*, 111 U. S. 449, 470; *Commonwealth* v. *Woelper*, 3 Serg. & R. 29, 53; High on Extraordinary Legal Remedies, 593, 697, 702. These authorities and the general practice indicate that in most of the American States only a nominal fine can be imposed in *civil quo warranto* proceedings. We shall not enter upon any discussion of the question as to the character of the proceeding nor the amount and nature of the money judgment. For, in Missouri, and prior to the decision in this case, the rulings were to the effect that the Supreme Court of Missouri had jurisdiction not only to oust but to impose a substantial fine in *quo warranto*.

In 1865, under a constitution which, like the present,

conferred power "to issue writs of *quo warranto* and hear and determine the same," the court tried the case of *State ex Inf.* v. *Bermoudy*, 36 Missouri, 279, brought against the clerk of a Circuit Court for usurpation of the office. There was a prayer for judgment of ouster and costs. The court said:

"No evidence is offered to charge the defendant with any evil intent, and it being probable that he acted from mistaken views only, the court will not avail itself of the power given by law, to impose a fine on him, and will compel him to pay the costs only of this proceeding."

In 1902, in *State* v. *Armour Packing Co. et al.*, 173 Missouri, 356, 393, information in the nature of *quo warranto* was filed in the Supreme Court against three corporations, praying that their franchises be forfeited because they had formed and maintained a conspiracy in restraint of trade. The court held that, "under the circumstances, the judgment of absolute ouster is not necessary, but the needs of justice will be satisfied by the imposition of a fine." It thereupon adjudged that each of the defendants should pay the sum of $5,000 as a fine, together with the costs of court.

In *State. ex Inf.* v. *Delmar Jockey Club*, 200 Missouri, 34, *quo warranto* was brought to forfeit the charter of the company, because it had violated a criminal statute prohibiting the sale of pools on horse races. A judgment of ouster was entered and a fine of $5,000 was imposed. On rehearing the judgment was amended and the provision for a fine omitted. Evidently this was not for want of jurisdiction to impose such sentence, but because it was considered that ouster was all that was demanded by the facts. This appears from the fact that in the present case the court adopted the language of the original Delmar decision, in which it was said that the fine is imposed for a violation of the corporation's implied con-

tract not to violate the franchise granted by the State
(218 Missouri, 360). So that, whatever may be the rule
elsewhere, in Missouri a corporation may in *quo warranto*
be subjected to a money judgment—whether called a fine
as punishment,—or damages for its implied contract not
to violate its franchise.

3. But the defendants insist that even if the court had
jurisdiction of the subject-matter and was authorized
to impose a fine, there was nothing in the pleading to
indicate that such an issue was to be tried, nor any prayer
warranting such relief, and hence that the judgment is
wanting in due process of law and void for want of notice
of what was to be heard and determined. It is true that
the Information did not ask for damages or that a fine
should be imposed. But if this be treated as a criminal
case a prayer was no more necessary than in an Indict-
ment or ordinary Information, since such proceedings
never contain any reference whatever to the judgment
or sentence to be rendered on conviction. In civil suits
the pleadings should no doubt contain a prayer for judg-
ment so as to show that the judicial power of the court
is invoked. The rules of practice also may well require
that the plaintiff should indicate what remedy he seeks.
But the Prayer does not constitute a part of the notice
guaranteed by the Constitution. The facts stated fix the
limit of the relief that can be granted. While the judg-
ment must not go beyond that to which the plaintiff was
entitled on proof of the allegations made, yet the court
may grant other and different relief than that for which
he prayed.

4. Nor, from a Federal standpoint, is there any in-
validity in the judgment because there was no statute
fixing a maximum penalty, no rule for measuring damages,
and no hearing on a subject which it is claimed was not
referred to in the Information. At common law, and under
many English statutes, the amount of the fine to be im-

posed in criminal cases was not fixed. This was true of the statute of 9 Ann, chapter 20, which, in *quo warranto* cases, made it "lawful as well to give judgment of ouster as to fine for usurping or unlawfully exercising any office or franchise." The amount to be paid in all such cases was left to the discretion of the court, "regulated by the provisions of Magna Charta and the Bill of Rights that excessive fines ought not to be demanded." 4 Black. Comm. 378. Or, considering the fine as in the nature of a civil penalty, the case is within the principle which permits the recovery of punitive damages. They are not compensatory, nor is the amount measured by rule. But "where the defendant has acted wantonly or perversely, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations" (*Lake Shore &c. Ry. Co.* v. *Prentice,* 147 U. S. 101), damages may in some jurisdictions be assessed, even in civil cases, by way of punishment. It is true that, except in cases for the breach of a contract of marriage, punitive damages have been allowed only in actions for torts. But no Federal question arises on a ruling that, in Missouri, punitive damages may be recovered from a corporation for the violation of its implied contract when, as alleged in the Information, the defendants "wilfully and wantonly misused their licenses." *Iowa Central Ry.* v. *Iowa,* 160 U. S. 389.

The real objection is not so much to the existence of the power to fix the amount of the fine as the fact that, when exercised by the Supreme Court of the State, it is not subject to review, and is said to be unlimited. But it is limited. *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86, 111. It is limited by the obligation to administer justice, and to no more assess excessive damages than to impose excessive fines. But the power to render a final judgment must be lodged somewhere, and in every case a point is reached where litigation must cease. What that point is can be determined by the legislative power of the State,

for right of appeal is not essential to due process of law. *Twining* v. *New Jersey*, 211 U. S. 78, 111.

· The Fourteenth Amendment guarantees that the defendant shall be given that character of notice and opportunity to be heard which is essential to due process of law. When that has been done the requirements of the Constitution are met, and it is not for this court to determine whether there has been an erroneous construction of statute or common law. *Iowa Central Railway* v. *Iowa*, 160 U. S. 389; *West* v. *Louisiana*, 194 U. S. 261. The matter was summed up by Justice Moody in *Twining* v. *New Jersey*, 211 U. S. 78, 110, where, citing many authorities, he said:

"Due process requires that the court which assumes to determine the rights of parties shall have jurisdiction, . . . and that there shall be notice and opportunity for hearing given the parties. . . . Subject to these two fundamental conditions, which seem to be universally prescribed in all systems of law established by civilized countries, this court has up to this time sustained all state laws, statutory or judicially declared, regulating procedure, evidence and methods of trial, and held them to be consistent with due process of law. . . . "

There is nothing in the present record which takes the case out of that principle. This was not like a suit on a note resulting in a sentence to the penitentiary; nor does it resemble any of the extreme illustrations given in *Windsor* v. *McVeigh*, 93 U. S. 274, 282, in which, after a trial, the judgment of a court having jurisdiction might be invalidated because the relief so far exceeded the issue heard as, in effect, to deprive the defendant of the benefit of his constitutional right to notice. No such question is presented in the present case, for the plaintiffs in error were bound to know that, under the laws of Missouri, the court, on proof of the charge contained in the Information, might impose a fine, and were afforded an op-

portunity to offer evidence in mitigation or reduction. On the application for a rehearing there was no claim that the fine was excessive, but the judgment was attacked on the ground that, for want both of jurisdiction and of notice, no such penalty could be imposed. We are concluded by the decision of the Supreme Court of the State as to its power; the judgment was within the issues submitted and is not void as having been entered without due process of law.

If the judgment was not void we cannot consider the collateral questions as to whether the suit abated against the Republic Oil Company when it gave notice of its withdrawal from the State; nor whether the act of 1905, amending the Anti-trust Act, operated to relieve the defendant from the penalties for all combinations in restraint of trade entered into prior to the adoption of the amending statute. These are non-federal questions.

5. It is further contended that the defendants were denied the equal protection of the law. This claim is based upon the fact that without indictment or trial by jury they were ousted of their franchise and subjected to a fine of $50,000 at the discretion of the Supreme Court, while corporations prosecuted in the Circuit Court for the identically same acts in violation of the anti-trust statute were entitled to a trial by jury and, if convicted, could be ousted of their franchises and subjected to a fine not to exceed $100 per day, during the time the combination continued in effect.

But proceedings by Information in the nature of *quo warranto* differ in form and consequence from a prosecution by indictment for violation of a criminal statute. In the one the State proceeds for a violation of the company's private contract—in the other it prosecutes for a violation of public law. The corporation may be deprived of its franchise for nonuser—a mere failure to act. It may also be deprived of its charter for that which, though

innocent in itself, is beyond the power conferred upon it as an artificial person. If, however, the act of misuser is not only *ultra vires* but criminal, there is no merger of the civil liability in the criminal offence. Separate proceedings may be instituted—one to secure the civil judgment, and the other to enforce the criminal law. Both cases may involve a consideration of the same facts; and evidence warranting a judgment of ouster may be sufficient to sustain a conviction for crime. A judgment may in one case sometimes be a bar to the other; but neither remedy is exclusive. The double liability, in civil and criminal proceedings, finds its counterpart in many instances, as, for example, where an attorney is disbarred or ousted of his right to practice in the court because of conduct for which he may likewise be prosecuted and fined.

In addition to these considerations it is to be noted that though the Anti-trust Act provides for penalties somewhat similar to those which may be entered in *quo warranto* proceedings, the statute did not, and, as held by the Supreme Court, could not lessen the power conferred upon it to hear and determine *quo warranto* proceedings and to enter judgments which on general principles appertained to the exercise of such constitutional jurisdiction. *Standard Oil Co.* v. *Tennessee,* 217 U. S. 413, 421; *Delmar Jockey Club* v. *Missouri,* 210 U. S. 324.

It was pointed out in the opinion (218 Missouri, 349), that where a corporation had entered into a combination in restraint of trade, it thereby offended against the law of its creation, and consequently forfeited its right longer to exercise its franchise. It was thereupon held, that in Missouri *quo warranto* might have been instituted for such acts of misuser, even though there had been no criminal statute on the subject. For this reason neither the validity nor invalidity of the anti-trust statute have any bearing on the case. The plaintiffs in error cannot

complain that they were deprived of the equal protection of the law, because in the civil proceeding they were not tried in the manner, and subjected to the judgment, appropriate in criminal cases.

If the plaintiffs in error were afforded due process of law, and were not deprived of the equal protection of the law, the judgment cannot be reversed. And, if it cannot be reversed, it cannot be modified to provide that it shall not be construed to conflict with a decree entered in an equity cause in another court to which plaintiffs are parties. Neither can it be amended by adding a provision that the judgment of ouster shall not operate to make those who buy plaintiff's products subject to prosecution, under the act of 1907, making it a felony for any person to deal in articles manufactured by a corporation whose license had been forfeited. This statute which, it is said, will deprive plaintiffs of the right to do interstate business, is not before us. We have no right to assume that it will be applied so as to interfere with any right, which plaintiffs have, under the Constitution, to do interstate business.

*Affirmed.*