## In re CONSERVATIVE MORTGAGE & GUARANTY CO.

## SOUL v. KELLER.

Circuit Court of Appeals, Sixth Circuit. February 8, 1928.

No. 5034.

1. Bankruptcy ⟺101—Bankruptcy adjudication gave bankruptcy court exclusive jurisdiction of bankrupt's property in its actual or constructive possession.

Bankruptcy adjudication gave bankruptcy court paramount and exclusive jurisdiction over the administration of bankrupt's property in its actual or constructive possession.

2. Bankruptcy ⟺20(2)—Bankruptcy court was in constructive possession of bankrupt's property not adversely held by state court's receiver.

Bankruptcy court was entitled to, and was in constructive possession of, bankrupt's property not adversely held by state court's receiver, except so far as a lien had been obtained thereon through action of state court.

3. Bankruptcy ⟺200(4)—Execution, levy, and bill in aid of execution filed in state court more than four months before bankruptcy gave lien on bankrupt's property, not affected by bankruptcy adjudication.

Execution, levy, and bill in aid of execution filed in state court by bankrupt's creditor more than four months before bankruptcy gave lien on bankrupt's property to the extent of the judgment, interest, and costs thereon, and costs of bill in aid of execution; such lien being a lawful preference, not affected by bankruptcy adjudication.

4. Bankruptcy ⟺20(2)—Bankruptcy court was entitled to administer bankrupt's property not needed to satisfy execution lien, except for administration by state receiver.

Bankruptcy court was entitled to administer bankrupt's property not needed to pay lien acquired thereon over four months before bankruptcy under bill in aid of execution filed in state court, except so far as it may have been, when bankruptcy intervened, in the custody of the state court through its receiver for purpose of lawful administration and distribution in the proceedings in aid of execution, in which case the state court could lawfully complete its administration, under the rule that jurisdiction first lawfully acquired will not be disturbed by bankruptcy.

5. Courts ⟺493(3)—Judgment creditor's petition, praying appointment of receiver, held bill in aid of execution, and state court acquired no jurisdiction thereunder to administer estate generally (Gen. Code Ohio, § 1579—11).

Judgment creditor's petition, filed in state court, alleging levy by court's bailiff under execution issued on a judgment on certain personalty belonging to judgment defendant, and praying appointment of a receiver to collect choses in action, not purported to be filed on behalf of creditors generally, nor asking for relief other than in aid of judgment creditor's own execution, nor making other creditors parties, *held* a mere statutory bill in aid of execution, apparently under Gen. Code Ohio, § 1579—11, and not a general creditors' bill, and state court therefore acquired no jurisdiction to administer judgment debtor's estate generally.

6. Courts ⟺493(3)—Whether state court had jurisdiction other than in aid of judgment creditor's execution must be determined by pleadings.

Even if municipal court might, if its powers were duly invoked, exercise all powers of court of common pleas of Ohio respecting general creditors' bill for administration of judgment debtor's estate, question whether jurisdiction other than in aid of judgment creditor's execution existed must be determined by the pleadings, since mere possession of such power is not of consequence, unless power is properly invoked by some act of the suitor concerned and in some mode recognized by law.

7. Courts ⟺188(3)—State statute held not to give municipal court power, under bill in aid of execution, to determine claims of all other creditors (Gen. Code Ohio, § 1579—7).

Gen. Code Ohio, § 1579—7, giving municipal court jurisdiction in all proceedings in nature of creditors' bills, and in aid of execution to subject judgment debtor's interest in property to payment of such court's judgment, and authorizing court to marshal and foreclose liens thereon, irrespective of amount, does not give any power under a bill filed merely in aid of

plaintiff's execution to marshal and foreclose liens or claims of all other creditors.

**8. Judgment** ⚖➡**828(3)—Mere errors in proceedings by state court having jurisdiction over general administration of debtor's estate do not subject judgment to collateral attack in federal court.**

Where state court by the pleadings acquires actual jurisdiction over the administration of debtor's estate and the distribution of its assets for the benefit of creditors generally, mere errors in proceedings within such jurisdiction do not subject the judgment to collateral attack.

**9. Bankruptcy** ⚖➡**20(2)—Judgment debtor, asserting in state court proceedings that receiver's duty was merely to pay plaintiff's judgment, held not estopped, after bankruptcy, from denying state court's authority to adjudicate other creditors' claims.**

Where corporate judgment debtor, during proceedings in state court in aid of execution, claimed that judgment creditor's bill filed in aid of execution was not a general creditors' bill, and that receiver appointed therein was merely authorized to pay plaintiff's judgment, and was exceeding his powers in acting as a general receiver, it was not estopped, after its subsequent adjudication in bankruptcy, from denying state court's authority to convert bill in aid of execution into general creditors' bill, notwithstanding failure to prosecute error on the denial of its repeated protests.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

In the matter of the Conservative Mortgage & Guaranty Company, bankrupt. From an order affirming an order of the referee directing T. C. Keller, as bankruptcy trustee, to apply to the state court for an order directing state court's receiver to deliver all property of bankrupt remaining in his hands to trustee, Gilbert M. Soul, as state court receiver, appeals. Affirmed.

Rudolph A. Cannon and A. V. Cannon, both of Cleveland, Ohio (White, Cannon & Spieth, of Cleveland, Ohio, on the brief), for appellant.

Sidney N. Weitz, of Cleveland, Ohio, for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This appeal presents a conflict of jurisdiction between the federal District Court, in bankruptcy, and the municipal court of Cleveland, over the assets of the bankrupt held, when the bankruptcy intervened, by a receiver previously appointed by the municipal court.[1]

---

[1] All italics in this opinion ours unless otherwise stated.

The facts, so far as immediately important, may thus be sufficiently stated:

On April 28, 1926, Dworken and Bradley, as plaintiffs, obtained judgment in the municipal court against the present bankrupt, as defendant, for $1,333.66 and costs. On May 4th following, plaintiffs filed in the municipal court a petition alleging levy by the court's bailiff, under execution issued upon the judgment, on certain goods, chattels, and choses in action belonging to the judgment defendant, and praying appointment of a receiver to collect the choses in action. Thereupon the court appointed appellant, Soul, "receiver herein of all debts, property, equitable interests, rights, and things in action of said judgment debtor, to collect and receive the goods, chattels and choses in action" belonging to the defendant or under its control, or in the hands of defendant's managing agent and secretary, and "to *apply the same* or the proceeds thereof, under direction of this court, *toward the satisfaction of the aforesaid judgment and costs,* and to hold the remainder, if any, subject to the further order of the court." The judgment debtor (or its managing agent) was ordered to deliver to the receiver all money "in his possession and under his control belonging to" the judgment debtor and not exempt from execution, and the judgment debtor was restrained from transferring or disposing of the property, or in any manner interfering therewith "until further order in the premises." Thereupon the receiver gave bond and took possession of the bankrupt's property (including all books and records), which he still retains, except funds collected and distributed by him. At dates ranging from May 10 to August 5, 1926, the receiver obtained successively authorizations, among other things, to appoint attorneys for himself, to bring suits to prevent transfer of the assets, to employ an auditor, the appointment of appraisers of the real estate, to sell the office furniture, and to bring suits on stock subscriptions, the latter for the assigned reason that the corporation was insolvent.

On September 2d involuntary bankruptcy petition was filed. On October 2d the receiver filed his report showing receipts of $6,-840.74 and disbursements of $2,527.84—thus more than $4,300 net, or more than three times the amount of the execution in aid of which the receivership suit was instituted. The disbursements to that date seem to have included, among other things, $1,200 to the receiver's attorneys and $500 to the receiver, plus $500 on the judgment against the execution defendant. The receiver under order

therefor, paid a dividend of 33⅓ per cent., amounting to about $1,000, on nine claims of creditors, including $444.55 to the judgment creditor, and an additional $500 to the receiver and $600 additional to his attorneys. Apparently a number of small claims were paid in full. The judgment creditor in aid of whose execution the bill was filed was thus paid in all $944.45. The fees of the receiver and of his counsel then amounted to $3,300, out of gross receipts of nearly $7,000 and net receipts of $4,300. The schedule filed under adjudication of voluntary bankruptcy (apparently at some time in October) listed 17 unsecured creditors, totaling $6,369.95.

In November the trustee in bankruptcy applied to the referee for an order for delivery by the municipal court receiver to the trustee of all property of the then bankrupt then remaining in the receiver's hands. After full hearing, the referee found that the trustee was entitled to the possession of all the remaining funds in excess of $1,333 and "costs of that proceeding," and directed the trustee to apply to the municipal court for an order on its receiver accordingly. The District Court, on review, approved and affirmed the referee's order.[2] The municipal court's receiver contends here that the present bankrupt had no power to file a voluntary petition in bankruptcy after the lapse of more than four months from the time of the state court's appointment of the receiver.

[1-4] The rules applicable to the facts of this case are that the bankruptcy court, by virtue of the adjudication, had paramount and exclusive jurisdiction over the administration of the bankrupt's property in its actual or constructive possession (Orinoco Co. v. Metzel [C. C. A. 6] 230 F. 40, 44); that the bankruptcy court was entitled to and was in constructive possession of the bankrupt's property not adversely held by the state court's receiver (In re Diamond's Estate [C. C. A. 6] 259 F. 70, 73 et seq.), except so far as a lien had been obtained thereon through the action of the state court; that the execution levy, and bill in aid of execution, filed more than four months before bankruptcy, gave a lien upon the bankrupt's property to the extent of the judgment, interest and costs thereon, and costs of the bill in aid of execution, such lien not being an unlawful preference, and so not affected by the bankruptcy adjudication (In re Rohrer [C. C. A. 6] 177 F. 381; In re Dayton, etc., Co., 291 F. 390, 401, opinion by Judge, now Mr. Justice, San-

ford); that as to the bankrupt's property not needed for such purpose the bankruptcy court is entitled to administer it, except so far as it may have been, at the time bankruptcy intervened, in the custody of the state court through its receiver for the purpose of lawful administration and disposition *in the proceedings in aid of execution*—in which case the state court could lawfully complete its administration under the rule that the jurisdiction first lawfully acquired will not be disturbed by the bankruptcy (In re Rohrer, supra; Metcalf v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122; Pickens v. Roy, 187 U. S. 177, 23 S. Ct. 78, 47 L. Ed. 128).[3] Except as above stated, the four-months rule cuts no figure here. The bankrupt has otherwise an absolute right to the benefit of the Bankruptcy Act (11 USCA). In re Yaryan Naval Stores Co. (C. C. A. 6) 214 F. 563, 565, 566.

[5] The remaining and controlling question thus is whether by the filing of the bill in aid of the judgment creditor's execution, the state court acquired jurisdiction to administer *generally* the estate of the judgment debtor—the present bankrupt. In the absence of such jurisdiction the action of the District Court was plainly right, unless, as the receiver contends, the judgment debtor is estopped by his alleged acquiescence and participation in the state court proceedings.

In our opinion the bill was not one for general administration. As we understand the record, the bill on its face and by its terms was a mere bill in aid of execution. It does not appear that it purported to be filed on behalf of creditors generally, or that it asked for relief other than in aid of the judgment creditor's own execution. Other creditors were not made parties. We find in the record no order requiring the other creditors of the execution defendant to file their claims with the receiver; nor does it appear that the receiver requested such filing. No other creditors than the execution plaintiff became parties to the bill. We find in the record no order requiring the municipal court receiver to send notice to all of the creditors asking them to file claims with him, nor any injunction against the bringing of creditors' suits upon their claims. We agree with the

---

[2] Presumably both the referee and the District Judge intended to include the costs of the original judgment, perhaps as part thereof.

[3] Metcalf v. Barker involved only the rights of the judgment creditor acquired by the filing of his bill in equity. Pickens v. Roy involved only the right of the state court to give relief to the judgment creditor. The estate appears to have been no greater than required for that purpose. The situation is the same as if the execution creditor's claim was sufficient to exhaust the debtors' estate.

courts below, that the bill was merely a statutory bill in aid of execution, apparently under section 1579-11 of the Ohio Code (1921 edition), which gives the municipal court "jurisdiction in every ancillary and supplemental proceeding, before and after judgment, including attachment, * * * aid of execution, * * * revivor of judgment and the appointment of a receiver, for which authority is now, or may hereafter be, conferred upon the court of common pleas, or a judge thereof, or upon justices of the peace. * * *"

[6] Assuming, for the purposes of this opinion, that the municipal court might, were its powers duly invoked, exercise all the powers of a court of common pleas in respect to a general creditors' bill for the administration of a judgment debtor's estate, yet the question whether jurisdiction other than in aid of the judgment creditor's execution existed must be determined by the pleadings therein. Mere possession of such power is not of consequence, unless the power is properly invoked; not by the court on its own motion, but by some act of the suitor concerned, and in some mode recognized by law. Freeman on Judgments, § 338. "In the absence of statute to the contrary, it is a general rule that the relief to be awarded by a judgment is limited to that sought by the pleadings, or incidental to such relief. * * * The right to recover depends not upon the prayer, but upon the scope of the pleadings and the issues made or which might have been made under them. A material variance between the relief sought and that awarded is fatal to the judgment. * * *" 33 Corp. Jur. p. 1144, § 88; Id. p. 1072, § 34; Standard Oil Co. v. Missouri, 224 U. S. 270, 32 S. Ct. 406, 56 L. Ed. 760, Ann. Cas. 1913D, 936.

[7] So far as appears from the record, the pleadings gave jurisdiction only to collect the execution plaintiff's claim; for we are cited to no Ohio statute or decision which automatically, or as matter of law, and without formal pleadings therefor, converts a bill solely in aid of a plaintiff's execution into a general creditor's bill.[4] Manifestly, the clause in the order appointing the receiver, "and to hold the remainder, if any, subject to the further order of the court," has no tendency in that direction. Section 1579-7 of the Ohio General Code gives the municipal

court jurisdiction "in all actions and proceedings in the nature of creditors' bills, and in aid of execution to subject the interests of a judgment debtor in real or personal property to the payment of a judgment of the municipal court and in such cases the court may proceed to marshal and foreclose liens thereon irrespective of amount, and all rights, vested or contingent, therein." Manifestly, this section does not purport to give any power under a bill filed merely in aid of a plaintiff's execution to marshal and foreclose liens or claims by or for the benefit of other creditors.

[8] We therefore think the municipal court without jurisdiction to do more than aid in enforcing the execution of the judgment plaintiffs thereunder. Of course, had the municipal court, by the pleadings therein, etc., acquired actual jurisdiction over the general administration of the debtor's estate, and the distribution of its assets for the benefit of creditors generally, mere errors in proceedings within such jurisdiction would not subject the judgment to collateral attack. Both the referee and the District Judge regarded the extension of receivership beyond the enforcement of the judgment plaintiffs' execution as not only erroneous, but beyond the court's jurisdiction. We agree with this view.

[9] The orders of the courts below were therefore right, unless for the alleged estoppel, the acts apparently thought to accomplish which are stated in the margin hereof.[5]

---

[4] Several decisions under the statute of New York are directly opposed in principle to the proposition just referred to. Stephens v. Meridan, 160 N. Y. 178, 54 N. E. 781, 73 Am. St. Rep. 678; Steinert v. Van Aken, 165 App. Div. 206, 150 N. Y. S. 525; In re Western Sav. Bank, 110 Misc. Rep. 444, 181 N. Y. S. 574.

[5] Upon the motion of the execution creditor for appointment of a receiver "appeared the plaintiff and the attorneys for certain stockholders (now attorneys for the receiver). By consent of those parties a receiver was appointed." (That action was germane to the bill in aid of execution.) The attorneys for the present bankrupt learned of the appointment of the receiver very shortly thereafter. Subsequently, at intervals, they consulted with the judge of the municipal court, in chambers, with regard to the case, the discussion revolving usually around the manner in which the defendant company was conducted and with regard to the extent of the receivership. *The attorneys for the defendant and the attorneys for plaintiff argued that the receiver's duty was merely to pay the plaintiff's judgment.* The judge gave it as his opinion that he was a general receiver, and that the receiver should protect all creditors alike; that only in this way would creditors, as well as stockholders, be protected. Upon one occasion, at the time fees were allowed to the receiver, the attorney for defendant asked the court to note an exception, not to the amount allowed, *but because of the claim that the receiver was exceeding his purposes.* The attorneys for the execution defendant filed a motion to reject the audit for a number of reasons, *one of which was that the receivership was a limited one.*

About July 17, 1926, the execution plaintiffs

Considering all these matters together, we see no basis for the assertion of estoppel against the bankrupt from denying the authority of the court to convert the bill in aid of execution into a general creditors' bill. It is apparent that the bankrupt used due efforts to avoid such treatment of the bill. Nor, to our minds, is the result altered by the fact that the bankrupt did not prosecute error on the denial of its repeated protests.

It follows from these views that the order complained of should be affirmed. We may add that it would seem not unlikely that in

the course of the bankruptcy administration the matter of dividends already paid to creditors may be equalized.

filed a motion for an order on the receiver to show cause why he should not be removed, on the ground "that ever since his appointment he has not acted for the benefit of his trust but has been acting in conjunction with his attorneys for the purpose of working out a suit which his attorneys then had pending against the defendant corporation in the common pleas court; that said suit was of no interest to this plaintiff; that the receiver spent large sums for an audit, and has not co-operated with plaintiff in seeing that the plaintiff's judgment was paid; that the receiver is creating a lot of expenses unnecessary in order to pay plaintiff's judgment; and that the receiver has refused to consent to a settlement of plaintiff's claim against the defendant."

On August 3, 1926, the motion for removal of the receiver was withdrawn, the record stating that "in a conference with the judge it was shown that *through some proposed plan there would be almost immediate results in a substantial sum,* whereupon plaintiffs agreed to let the receiver go on."

On August 5, 1926, when application was made to pay costs and expenses, and to pay plaintiffs $500 on their judgment, the judge stated in conference that he would not grant the motion to pay plaintiffs any fixed sum; *that there had to be an equal dividend to all creditors.* The record states: "It was at this time that the attorneys for defendant sent to the judge a letter reiterating their claim as to the limits of the receivership and asking that they be notified of any future motions filed by the receiver."

It appears that in an order granting the execution creditor's motion to employ an auditor it was stated that it was for the best interests of all creditors that a financial statement of the corporation, showing its assets and liabilities, be prepared; also that in the order appointing the appraisers it was recited that it was necessary for the interests of all creditors and stockholders; also that the petition to sell stated that there are existing outstanding claims against the defendant corporation far in excess of the amount of moneys on hand; that it is necessary that the receiver sell the corporate assets to raise money to apply on said debts; that said corporation is hopelessly insolvent and has abandoned its authorized corporate purposes, and for some time to come it will be necessary for him to maintain an office; and that in an order which was made to sell the office furniture it was stated to be "for the best interests of the defendant corporation, its creditors and stockholders."