Ross SEARS, Relator,

v.

George BAYOUD, Secretary of State of the State of Texas, et al., Respondents.

No. C–9506.

Supreme Court of Texas.

Feb. 14, 1990.

OPINION

GONZALEZ, Justice.

This is an election mandamus. The issue is whether the requirement in article V, section 2 of the Texas Constitution that a candidate for the supreme court be a lawyer for at least ten years must be satisfied by the day of the general election or by the time service in office begins.

Relator Ross Sears, a candidate in the Democratic primary for Justice, Place 2, Supreme Court of Texas, filed this petition for writ of mandamus. He is asking us to order respondent Fred Meyer, Chairman of the Republican Party of Texas, to declare Lamar McCorkle, a candidate in the Repub-

lican primary for Justice, Supreme Court of Texas, Place 2, ineligible. Sears is also requesting that we order Meyer to exclude McCorkle's name from the Republican primary ballot for 1990, and order Respondent George Bayoud, the Texas Secretary of State, not to certify McCorkle as the nominee for the office of Justice of the Supreme Court of Texas. Two other candidates for the Democratic Party's nomination for place 2, Bob Gammage and C.L. (Scrappy) Holmes, have adopted Sears' pleadings and join in his prayer for relief. Respondent Fred Meyer filed a Motion to Dismiss urging that jurisdiction is not proper in this court.

## JURISDICTION

■ This court has jurisdiction to entertain the petition and to issue the writ by virtue of the Texas Election Code, section 273.061, which provides:

### Jurisdiction

The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer

TEX.ELEC.CODE § 273.061 (Vernon 1986), and section 161.009, which provides:

### Party Officer Subject to Mandamus

The performance of a duty placed by this code on an officer of a political party is enforceable by writ of mandamus in the same manner as if the party officer were a public officer.

TEX.ELEC.CODE § 161.009 (Vernon 1986).

Respondents contend that this court does not have jurisdiction, asserting that Texas Election Code, section 273.063(a), and Texas Rule of Appellate Procedure 121(a)(1) require a mandamus proceeding to first be filed in the court of appeals. Section 273.-063(a) of the Election Code does not require that an original petition for writ of mandamus be filed in the court of appeals prior to filing in the supreme court. Section 273.-063 concerns venue and merely provides in which court of appeals district the petition must be filed if the relator chooses to file in the court of appeals.

Texas Rule of Appellate Procedure 121(a)(1) provides:

When the court of appeals is authorized to exercise concurrent jurisdiction over an original proceeding, the motion should first be presented to the court of appeals. The motion for leave to file in the supreme court shall state the date of presentation of the petition to the court of appeals and that court's action on the motion or petition *or the compelling reason that a motion was not first presented to the court of appeals.*

TEX.R.APP.P. 121(a)(1) (emphasis added). The rule does not stand as an absolute bar to the filing of a petition in the supreme court without having first filed in the court of appeals. *See also Love v. Wilcox,* 119 Tex. 256, 28 S.W.2d 515, 520–21 (1930); *Westervelt v. Yates,* 145 Tex. 38, 194 S.W.2d 395 (1946); *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269 (1944); *Burroughs v. Lyles,* 142 Tex. 704, 181 S.W.2d 570 (1944). In *Thiel v. Harris County Democratic Executive Committee,* 534 S.W.2d 891 (Tex.1976), we granted a petition for writ of mandamus directing the Harris County Democratic Committee to exclude from the primary ballot the name of a candidate for state representative. In *Thiel,* we reiterated the general rule now embodied in rule 121(a)(1): "[o]rdinarily the Court encourages that relief of this nature be sought in the court of civil appeals." *Id.* at 895. We then explained that the petition was entertained because the matter involved was of "statewide application" and additionally because there was a conflicting court of appeals decision involving different parties. *Id.*

In his motion for leave to file petition for writ of mandamus, Sears asserts that the issue before the court is of "statewide application." He additionally states that "the urgency of the time constraints" necessitates immediate review by this court. His motion states that if this dispute is not resolved by final judgment before the be-

ginning of absentee balloting, it may become moot by virtue of section 141.034 of the Election Code, which provides that "[a]n application for a place on the ballot may not be challenged for [non]compliance with the applicable requirements as to form and procedure after the day before the beginning of absentee voting by personal appearance...." TEX.ELEC.CODE § 141.034 (Vernon 1986). Absentee voting for the primary has not yet started. We conclude that Sears has complied with rule 121(a)(1).[1]

### MERITS

■ Sears contends that McCorkle is ineligible to serve as a justice of the Supreme Court of Texas under article V, section 2 of the Texas Constitution, which provides in part:

> No person shall be eligible to serve in the office of Chief Justice or Justice of the Supreme Court unless the person is licensed to practice law in this state and is, *at the time of election,* a citizen of the United States and of this state, and has attained the age of thirty-five years, *and has been a practicing lawyer, or a lawyer and judge of a court of record together at least ten years.*

TEX. CONST. art. V, § 2 (Vernon Supp.1990) (emphasis added).

All parties agree that on the date of the general election, McCorkle will be several days short and will not have been "a practicing lawyer, or lawyer and judge of a court of record together at least ten years."[2] Pursuant to Texas Election Code, section 41.002 (Vernon 1986), the 1990 general election of justices for the Supreme Court of Texas is to be held on November 6, 1990. The official records of the Supreme Court of Texas establish that McCorkle was licensed to practice law in Texas on November 24, 1980. The records of the Board of Law Examiners of the Supreme Court of Texas reflect that the November 1980 candidates for licensure, including McCorkle, were not certified to the supreme court as eligible for licensing until November 17, 1980. McCorkle argues that the true and correct copy of his oath of office, attached to the back of his license, indicates that he took the oath of office on November 10, 1980. Even so, McCorkle will not have been "a practicing lawyer, or a lawyer and judge of a court of record together at least ten years" at "the time of election." By the most favorable reading, McCorkle will miss eligibility by a matter of a few days. Nonetheless, a candidate is either eligible or he is not. Application of the rule of *de minimis non curat lex*[3] would sacrifice the mandate of article V, section 2 of the constitution in favor of expediency.

Thus, the issue to be resolved is whether article V, section 2 of the Texas Constitution requires a candidate for the Supreme Court of Texas to have been a lawyer for at least ten years at the time of the election or at the time the candidate would assume office. Sears argues that the phrase "at the time of election" modifies each of the subsequent requirements in article V, section 2 that the candidate: (1) be "a citizen of the United States and of this State;" (2) have "attained the age of thirty-five years;" and (3) have "been a practicing lawyer, or a lawyer and judge of a court of record together at least ten years."

---

1. This case falls within the narrow exception in rule 121(a)(1) permitting a mandamus proceeding to be filed in the Supreme Court without having first been filed in the court of appeals. Ordinarily, where jurisdiction is concurrent, a mandamus proceeding should first be presented to the court of appeals.

2. Justice Cook, in his dissenting opinion, asserts that McCorkle is eligible because a candidate is not officially "elected" until the final canvassing authority for the election completes the canvass for the office. *See* TEX.ELEC.CODE ANN. § 221.005. This novel construction of the election code is unsupported by any authority and is inapposite since Article V, section 2 of the constitution requires a candidate to be eligible on the day of *election,* not at the time a candidate is certified as having been *elected. See State by Reyna v. Goldberg,* 604 S.W.2d 549, 550 (Tex. Civ.App.—Waco 1980) (orig. proc.) (issue is whether qualifications met as of the date of the general election).

3. The law does not care for, or take notice of, very small or trifling matters. *Black's Law Dictionary* 388 (5th ed.1979).

McCorkle argues that the phrase "at the time of the election" modifies only the requirement that a candidate be "a citizen of the United States and of this state."

We have repeatedly recognized the principle that constitutional provisions which restrict the right to hold public office should be strictly construed against ineligibility. *Brown v. Meyer,* 787 S.W.2d 42 (Tex.1990); *Hall v. Baum,* 452 S.W.2d 699, 702 (Tex.1970), *appeal dismissed,* 397 U.S. 93, 90 S.Ct. 818, 25 L.Ed.2d 79 (1970); *Willis v. Potts,* 377 S.W.2d 622, 623 (Tex.1964). However, "[t]he Texas Constitution derives its force from the people of Texas. This is the fundamental law under which the people of this state have consented to be governed." *Edgewood Independent School District v. Kirby,* 777 S.W.2d 391, 394 (Tex.1989). Accordingly, in construing a constitutional provision, this Court has always given effect to the intention of the framers and ratifiers of the provision. *See Id.,* at 394–95; *Deason v. Orange County Water Control Improvement District No. One,* 151 Tex. 29, 244 S.W.2d 981, 984

(1952); *Koy v. Schneider,* 110 Tex. 369, 218 S.W. 479, 481 (1920).

The delegates to the Constitutional Convention of 1875 were the initial drafters of article V, section 2. There were no eligibility requirements for supreme court justices in the 1845 and 1861 Texas Constitutions. *See* TEX. CONST. art. IV, § 2 (1845); TEX. CONST. art. IV, §§ 2–5 (1861). Similarly, the Reconstruction Constitution of 1869 provided that the justices "shall be appointed by the Governor," and contained no eligibility requirements. *See* TEX. CONST. art. V, § 2 (1869). In the 1866 Constitution, however, article IV, section 2 required that a Supreme Court Justice "shall have arrived at the age of thirty-five years at the time of election." TEX. CONST. art. IV, § 2 (1866). Article IV, section 2 of the 1866 Constitution is the basis of article V, section 2 of the 1876 Constitution. At the Constitutional Convention of 1875, several delegates proposed differing eligibility requirements of supreme court justices, *each of which had to be met at the time of the election.*[4] Notwithstanding the Respondents' arguments concerning proper grammatical construction,[5] we believe that the

---

[4] Delegate Lipscomb Norvell proposed an article with no eligibility requirements for the justices of the supreme court. *See Journal of the Constitutional Convention of the State of Texas* 95 (Sept. 14, 1875). Delegate Stillwell H. Russell proposed the requirement that district judges "shall have attained the age of thirty-five years, and shall have been a licensed practicing lawyer in this State *for the ten years next preceding his said election." Id.* at 102. The Committee on Judiciary adopted these two requirements, each modified by the time of the election for supreme court justices and suggested a proposal including the requirement that "[e]ach of said justices at the time of his election shall be a citizen of the United States. ..." *Id.* at 407. The Committee on Judiciary also proposed an experience requirement of seven years. *Id.* at 407. Delegate John Reagan, joined by Delegates P.R. Scott, C.B. Kilgore and Marion Martin, also of the Committee on Judiciary, proposed an alternative version, eventually accepted by the convention delegates, which combined the three eligibility requirements:

No [person] shall be eligible to the office of Chief Justice or Associate Justice of the Supreme Court unless he be, at the time of his election, a citizen of the United States and of this State, and unless he shall have attained the age of thirty years, and shall have been a practicing lawyer, or a judge of a court in this

State, or such lawyer and judge together, at least seven years.

*Id.* at 418. *See* TEX. CONST. art. V, § 2 (1876). Each of the subsequent proposals, defeated for other reasons, also contained language providing that the three requirements had to be satisfied "at the time of [the] election." *See Journal of the Constitutional Convention of the State of Texas,* at 563 (proposal of Delegate George McCormick); *Id.* at 564 (proposal of Delegate J.W. Whitfield). None of the proposals suggested that only one of the three requirements was to be satisfied at the time of election. Indeed, one suggested amendment proposing the deletion of the words

and unless he shall have attained the age of thirty years, and have been a practicing lawyer or a judge of a District Court in the State, or such lawyer and judge together, for at least seven years

*Id.* at 647 (proposal of Delegate Norvell) was defeated. To argue that the delegates intended to have the phrase "at the time of his election" modify only the first requirement is to ignore each proposal made to the Committee on Judiciary, article IV, section 2 of the 1866 constitution, which was the forerunner of the 1876 provision and the other proposals at the convention.

[5] We refuse to ignore clear evidence of constitutional intent in favor of technical rules of gram-

delegates to the 1875 Constitutional Convention intended article V, section 2 to have three requirements, each of which were to be met "at the time of [the] election," rather than at the time of taking office. The subsequent amendments to article V, section 2 changed only the requirements themselves, not the time when they are to be satisfied.[6] Therefore, we hold that article V, section 2 requires a candidate for the Supreme Court of Texas to have been a practicing lawyer, or a lawyer and judge of a court of record together at least ten years *at the time of the election.*

We are not writing on a clean slate; our holding today is consistent with the conclusion previously reached by every Texas court that has interpreted this constitutional provision. In *Purcell v. Lindsey,* 158 Tex. 541, 314 S.W.2d 283 (1958), this court confronted the issue of eligibility for election to the Court of Criminal Appeals in an original mandamus action. The question presented was whether the applicant, Graham Purcell, satisfied the requirement that he have been a practicing lawyer for at least ten years as required by article V, section 2. In a unanimous opinion, we stated:

mar. As we stated in *Lemp v. Armengol,* 86 Tex. 690, 26 S.W. 941, 942 (1894), "[c]onstruction based upon grammatical niceties are not favored, even in interpreting constitutions and statutes, which are presumed to be drawn with great solemnity and care. It is doubtful if a rule of syntax in reference to the position of words or clauses in a sentence ought ever to have a controlling effect save as a last resort." In *Lo–Vaca Gathering Co. v. Missouri–Kansas–Tex. R.R. Co.,* 476 S.W.2d 732, 737 (Tex.Civ.App.—Austin 1972, writ ref'd n.r.e.), the court stated "[t]he courts are not called upon to judge the meaning and effect of a statute by the rules alone of the arbiters of grammar, who themselves are not always in agreement and are aligned today in several schools of thought. The courts are empowered to determine issues of law, but not the rules of syntax."

"The rule has long prevailed in this State that constitutional provisions should not be given a technical construction which would defeat their purpose." *Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147, 154 (1942). The delegates gave no indication whatsoever that they intended one of the three requirements to apply at the time of the election and the other two to apply at the time of taking office. Indeed, the convention proceedings suggest the converse.

It would appear that in 1945 when the people of Texas, acting in their sovereign capacity in fixing the fundamental law of the state by constitutional amendment decided that "no person shall be eligible to the office of Chief Justice or Associate Justice of the Supreme Court unless he ... shall have been a practicing lawyer and judge of a court of record together at least ten years," ... *they prescribed in definite terms that* from and after the effective date of the 1945 amendment, *a judge ... must "have been a practicing lawyer or a lawyer and judge of a court of record together (for) at least ten years" prior to the date of his election.*

*Id.* 314 S.W.2d at 286 (citations omitted) (emphasis added). Applying the provision as it related to candidates for the Court of Criminal Appeals,[7] we interpreted article V, section 2 as requiring that a candidate must have been a lawyer for at least ten years prior to the date of the election. *Id.* Three appellate courts have followed our interpretation in *Purcell.* In *Kothmann v. Daniels,* 397 S.W.2d 940 (Tex.Civ.App.—San Antonio 1965) (orig. proc.) (per curiam), the court stated in dicta:

6. Among other changes, the 1891 amendment increased the salary of the justices, lengthened their term to six years and "changed the provision requiring members of the court to have been 'a practicing lawyer or a judge of a court in this state', by omitting the words 'in this state' ...." TEX. CONST. art. V, § 2, *Historical Note* 17 (Vernon 1955).

The 1945 amendment included such changes as increasing the court's size from three justices to nine, increasing "the age of eligibility from thirty to thirty-five years, and the length of time as a practicing lawyer or judge of a court, or both, from seven to ten years ...." *Id.*

The 1981 amendment changed "associate justices" to "justices" and made the provision gender neutral. *See* TEX. CONST. art. V, § 2 (Amended Nov. 4, 1980, eff. Sept. 1, 1981) (Vernon Supp.1990).

7. In 1958, when *Purcell* was decided, article V, section 4 provided, in part, that "[s]aid Judges [of the Court of Criminal Appeals] shall have the same qualifications and receive the same salaries as the Judges of the Supreme Court." *See* TEX. CONST. art. V, § 4 (Vernon 1955).

Our conclusion is further supported by the fact that *the framers of the Texas Constitution of 1876, when they intended that the conditions of eligibility must exist as of the date of the election, expressed such intention in clear and plain language. Thus, Art. V, § 2,* which provides that no person "shall be eligible to the office of Chief Justice or Associate Justice of the Supreme Court" unless he possesses certain qualifications, *explicitly recite that the candidate must possess such qualifications "at the time of his election." See Purcell v. Lindsey,* 158 Tex. 541, 314 S.W.2d 283 (1955).

*Id.* at 943 (emphasis added).

In *McClelland v. Sharp,* 430 S.W.2d 518 (Tex.Civ.App.—Houston [14th Dist.] 1968) (orig. proc.) (per curiam), the court denied a writ of mandamus concerning the eligibility of a candidate for the Texas legislature. In concluding that the courts should not "adopt a rule which would require party officials to certify a candidate which the public records show not to be qualified for the office he seeks," 430 S.W.2d at 522, the court discussed *Purcell,* stating:

> In *Purcell v. Lindsey,* ... [t]he Supreme Court held that the relator was required to be a practicing lawyer for ten years in order to be qualified for the office he sought and that the committee's refusal to certify him because he was not licensed to practice law, according to the records of the Supreme Court, until a date less than ten years before the date in which the general election was to be held, was proper.

*Id.* at 521–22.

In *State by Reyna v. Goldberg,* 604 S.W.2d 549 (Tex.Civ.App.—Waco 1980, orig. proceeding), the unanimous court, without citing *Purcell,* reached the identical conclusion—the date of the general election controls the eligibility requirements within article V, section 2. The court held that Michael J. McCormick was eligible for the Court of Criminal Appeals, stating:

> The precise question we are called upon to determine is whether or not Michael J. McCormick, *as of Tuesday, November 4, 1980, the date of the General Election, will have been for at least ten years prior thereto a "practicing lawyer" within the meaning of the constitutional provision hereinabove quoted.* We are of the opinion and hold that this record amply establishes that Mr. McCormick has been a practicing lawyer continuously from and after September 18, 1970, the date he received his law license, until the time the case was tried (August 8 through 11, 1980), and at the time of trial he was engaged in employment and work which would qualify him as a practicing lawyer until November 4, 1980, *the date of the General Election.*

*Id.* at 550–51 (emphasis added).

Our court's interpretation of article V, section 2 in *Purcell* is sound and persuasive.

■ As the Republican Party Chairman, Meyer is required to "certify in writing for placement on the general primary election ballot the name of each candidate who files" with him an application for candidacy. *See* TEX.ELEC.CODE § 172.028(a) (Vernon 1986). Pursuant to sections 145.003(c) and 145.003(f)(2) of the Texas Election Code, Meyer may declare a candidate "ineligible before the beginning of absentee voting" for the primary election if "facts indicating that the candidate is ineligible are conclusively established by another public record." *See* TEX.ELEC.CODE §§ 145.-003(c) & 145.003(f)(1) (Vernon 1986). Meyer is also required to review the application McCorkle filed for a place on the ballot to determine whether it complies with the requirements as to form, content, and procedure. Tex.Elec.Code Ann. § 141.032(a) (Vernon 1986). The contents of the application form are prescribed by the Secretary of State and require McCorkle to swear that he is "eligible to hold the [supreme court] office under the Constitution and the laws of this state." As set forth above, McCorkle is not qualified under the constitution of this state to hold the office for which he applied. Thus, Meyer, pursuant to section 141.032(e), "shall reject the application and immediately deliver to the candi-

date written notice of the reason for the rejection." Meyer's prior determination that the application complies with the applicable requirements does not preclude a subsequent determination that the application does not comply. *See* TEX.ELEC. CODE ANN. § 141.032(d). As pointed out by Sears, an application for a place on the ballot may not be challenged as to form or procedure later than the day before the beginning of absentee voting. *See* TEX. ELEC.CODE ANN. § 141.034.

As previously stated, the pertinent official records of the Supreme Court of Texas and of the Board of Law Examiners of the Supreme Court of Texas are public records. They establish that McCorkle is ineligible. Meyer may not ignore these facts; he must declare McCorkle ineligible. *See Hayes v. Harris County Democratic Executive Committee*, 563 S.W.2d 884, 885 (Tex.Civ. App.—Houston [14th Dist.] 1978, no writ). Section 145.003(g) of the Texas Election Code provides:

> If a candidate is declared ineligible after the deadline for omitting an ineligible candidate's name from the ballot, the authority making the declaration [of ineligibility] shall promptly certify in writing the declaration of ineligibility to the canvassing authority for the election.

TEX.ELEC.CODE § 145.003(g) (Vernon 1986).

Because McCorkle is an ineligible candidate in the 1990 race for Justice, Place 2, Supreme Court of Texas, the petition for writ of mandamus is conditionally granted. The writ will not be issued unless Meyer fails to notify the Clerk of this court, in writing, by 10:00 a.m. on February 20, 1990, that he has rejected McCorkle's application, delivered to McCorkle written notice of the reason for rejection, and certified in writing a declaration of ineligibility to the canvassing authority for the election. We decline to issue a mandamus ordering Meyer to remove McCorkle's name from the primary ballot. *See* TEX.ELEC.CODE § 172.058(a) (Vernon Supp.1990).[8]

■ Further, we also deny Sears' request to order the Secretary of State not to certify McCorkle. The Secretary of State does not have the duty to certify names on the ballot for the primary. His duty is to certify names for the general election to be held in November. Therefore, the controversy as to the Secretary of State is not ripe, and no relief is granted against the Secretary of State at this time.

Because of the proximity of the date for commencement of absentee balloting, a motion for rehearing will not be entertained. Tex.R.App.P. 190(a).

SPEARS, J., dissents, joined by PHILLIPS, C.J., COOK and HECHT, JJ.

SPEARS, Justice, dissenting.

Today the court's majority has run a bulldozer over every roadblock, both procedural and substantive. It serves personal impulse and not the law of the land. I therefore dissent.

---

8. Section 172.058(a) of the Texas Election Code currently provides:

> If a candidate who has made an application for a place on the general primary election ballot that complies with the applicable requirements dies or is declared ineligible after the 62nd day before general primary election day, the candidate's name shall be placed on the ballot and the votes cast for the candidate shall be counted and entered on the official election returns in the same manner as for other candidates.

TEX.ELEC.CODE § 172.058 (Vernon Supp. 1990). The Legislature last substantively amended § 172.058 in 1986 to change the time limitation for removing an ineligible candidate from 65 to 62 days before the primary election. Amended by Acts 1986, 69th Leg., 3rd C.S., ch. 14, § 16, eff. Sept. 1, 1987. In 1988, the Legislature advanced the date of the party primaries from May to March. However, no corresponding change was made to § 172.058(a). As a result, the courts are limited in exercising a role concerning candidate eligibility. For example, under TEX.ELEC.CODE § 172.029(c) (Vernon 1986), party chairs are required to certify their party's candidates not later than the 10th day after the filing deadline. This year that certification deadline fell on January 12. The 62nd day before the March 13 general primary, provided by Section 172.058, was January 10. Thus, by the time McCorkle, an ineligible candidate, was certified by his party chair, the court had no power to order that his name be removed. If the Legislature desires to afford a judicial remedy to remove ineligible candidates from the primary ballot after certification, it will need to enact corrective legislation.

It is the people who have the sole power to change or modify the plain language of the constitution, not this court. *See* Tex. Const. art. XVII, § 1; *Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147, 154 (1942). Until the people change it, the constitution itself remains the supreme law of the land. *Cramer,* 167 S.W.2d at 154. This court cannot by its own edict change the constitution, and it certainly cannot do so by mere dicta.

In construing the constitution, we certainly consider the intent of the people who adopted it. *Edgewood Indep. School Dist. v. Kirby,* 777 S.W.2d 391, 394 (Tex.1989). However, because of the difficulties inherent in determining the intent of voters long ago, "we rely heavily on the literal text." *Id.* And we must presume that the language used in the constitution was carefully selected. *Cramer,* 167 S.W.2d at 152.

The court makes no such presumption in this case, but on the contrary, presumes that the constitutional drafters used bad grammar. In fact, the court does not concern itself at all with the literal text of the provision except by way of a single footnote deriding the "technical" rules of grammar.

However technical it may be, language is the means by which we communicate our thoughts and ideas. Educated people try to use language correctly in order to convey their message more precisely. Berating the "technical" rules of grammar serves only to betray the court's real complaint which is that the language itself does not say what the court wishes it did. To circumvent this problem, the court essentially rewrites the constitution to say what it thinks our constitutional founders would have said if only they had not been such poor grammarians.

As a substitute for what the constitution actually says, the court purports to apply the true intent of the drafters. Thus, despite what the drafters actually said, the court concludes they meant to say something different. And from whence does the court derive this divine knowledge of the drafters' true intent? From the very language that the drafters *rejected.* From the language they *refused* to adopt.

As proof of the drafters' intent, the court cites numerous examples of proposals that were made to the constitutional convention's committee on the judiciary. Yet these proposals were nothing more than that—mere proposals. When delegates John Reagan, P.R. Scott, C.B. Kilgore and Marion Martin proposed their alternative, they expressly stated that they were doing so because they were unable to agree to the judiciary article as it was presently written. *Journal of the Constitutional Convention of the State of Texas* 413 (Oct. 20, 1875). The version they proposed, which was eventually accepted by the whole convention and ratified as part of the constitution, reads as follows:

> No [person] shall be eligible to the office of Chief Justice or Associate Justice of the Supreme Court unless he be, at the time of his election, a citizen of the United States and of this State, and unless he shall have attained the age of thirty years, and shall have been a practicing lawyer, or a judge of a court in this State, or such lawyer and judge together, at least seven years.

The court baldly states that this provision "combined" the eligibility requirements so as to make the "at the time of election" language modify all three, but this is not so. The provision actually separates the requirements and includes the "at the time of election" phrase only in the first "unless" clause.

After several amendments, the provision still maintains its basic structure and now reads as follows:

> No person shall be eligible to serve in the office of Chief Justice or Justice of the Supreme Court unless the person is licensed to practice law in this state and is, at the time of election, a citizen of the United States and of this state, and has attained the age of thirty-five years, and has been a practicing lawyer, or a lawyer and judge of a court of record together at least ten years.

The main clause makes clear that the primary focus of the provision is to set forth

the requirements for a person to be "eligible to serve." Four subordinate clauses are then used to describe those requirements. Looking at the exact language of the provision again, one need only insert parenthetical numbers to make obvious the four separate clauses which constitute the four requirements for eligibility "to serve:"

> No person shall be eligible to serve in the office of Chief Justice or Justice of the Supreme Court unless (1) the person is licensed to practice law in this state, and (2) is, at the time of election, a citizen of the United States and of this state, and (3) has attained the age of thirty-five years, and (4) has been a practicing lawyer, or a lawyer and judge of a court of record together at least ten years.

The "at the time of election" phrase is part of the second requirement only.[1] If the drafters had intended the "at the time of election" language to modify other requirements, there are certainly other ways they could have written it. However, they chose *not* to adopt other proposals, and the text they did adopt is this.

If I thought it would make some difference, I would certainly lend any member of the court my *Harbrace College Handbook* for instruction in the English language. Alternatively, I could recommend to them a tutorial session with some good high school English teachers. However, I see little point in belaboring the rules of grammar because, in any event, the court seems to view the constitution's actual text as a mere technicality.

This is constitutional manipulation at its worst. The court ignores the text and reaches back into the historical record for something—anything—to support the conclusion it wants to reach, and in doing so, it relies on the very proposals that the constitutional drafters ultimately rejected. And what of the people who adopted the constitution? We have long made clear that, in matters of constitutional construction, it is the intent of the drafters *and ratifiers* that we seek. *Edgewood*, 777 S.W.2d at 394-395; *Cox v. Robison*, 105 Tex. 426, 150 S.W. 1149, 1151 (1912). The constitution derives its force, not from the drafters alone, but from the people who consent to be governed by it. *Edgewood*, 777 S.W.2d at 394. One reason for relying so heavily on the literal text is because this is the language that the voters themselves ratified.

The court has never previously considered the question involved here, and *Purcell v. Lindsey*, 158 Tex. 541, 314 S.W.2d 283 (1958) is certainly not dispositive. It involved a lawyer, Graham Purcell, who was seeking to become a candidate for the Court of Criminal Appeals in the 1958 general election to take office on January 1, 1959. Purcell had been licensed in August 1949. The issue was whether the 1891 constitutional provision which specifically required only seven years of practice for the Court of Criminal Appeals had been superseded by a 1945 amendment which required ten years of practice. This court ruled that the 1945 amendment applied and therefore held that Purcell was ineligible. In doing so, the court stated that a judge must have been a practicing lawyer for "at least ten years prior to the date of his election." 314 S.W.2d at 286.

This language from *Purcell* is what the court today cites as authority for effective-

---

1. The framers and ratifiers were clearly justified in requiring some qualifications to be satisfied at the date of election and others by the date of taking office. For example, the United States Constitution requires:

> No Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen.

U.S. Const., art. I, sec. 3, cl. 3. A similar requirement obtains for members of the House of Representatives. U.S. Const., art. I, sec. 2, cl. 2.

Thus residency is required as of the date of election, but age can be satisfied thereafter. In recent times, Senator Joseph Biden was only twenty-nine when elected, but attained the requisite age before his term began. P. O'Connor, *Members of Congress Since 1789* 22 (1977). Also, Senator Rush D. Holt was elected when he was only twenty-nine, and the Senate refused to declare his election invalid on the ground of age. Congressional Quarterly, *Guide to the Congress of the United States* 302 (1971).

ly changing the constitution. And yet, in *Purcell*, the court never even considered the issue now presented; its language is simply loose writing and pure dicta. *Purcell* would have been ineligible regardless of how one reads the "at the time of election" language; he would not have been a practicing lawyer for ten years even by January 1, 1959. Therefore, the question of whether the constitution requires ten years at the time of election or ten years at the time of service was simply not before the court.

Similarly, each court of appeals decision cited by the majority is one in which the issue here did not present itself. No Texas court has ever been faced with construing this constitutional language in the context of a judge who would be eligible at the time service begins but not eligible at the time of the election.

The only analogous Texas case involved a candidate's eligibility to hold the office of state representative. *Rose v. White*, 536 S.W.2d 395 (Tex.Civ.App.—Dallas 1976, orig. proceeding). Under a similar constitutional provision, a candidate was required to be twenty-one years old. The court ruled that, even though the candidate would not be twenty-one by election day, he was still eligible because he would be twenty-one by the day service in office would begin.

This court has repeatedly recognized that constitutional provisions restricting the right to hold public office should be strictly construed *against* ineligibility. *Brown v. Meyer*, 787 S.W.2d 42 (Tex.1990); *Willis v. Potts*, 377 S.W.2d 622, 623 (Tex.1964). Therefore, even if there were some ambiguity in the meaning of the constitutional provision, it should properly be construed so as to permit McCorkle's eligibility as a candidate. Nevertheless, the court concludes that McCorkle is ineligible and simply refuses to apply this established rule of strict construction. Of course, given that it has already chosen to ignore the actual text, to ignore the presumption of carefully chosen language, and to focus on the proposals *rejected* by the drafters, it should not be surprising that the court makes this mistake as well. All roadblocks aside, the court is bound for its destination.

Finally, after having shoved aside every substantive roadblock, the court encounters a procedural chasm. It cannot as a matter of law order the relief requested by the relators. The relators sought a writ of mandamus from this court in order to have McCorkle's name removed from the ballot. However, because we are within sixty-two days of the primary election, McCorkle's name *must* remain on the ballot. Tex.Elec. Code § 172.058. Yet, rather than simply stopping at this additional roadblock, the court commences a long and tortured journey through the Election Code in search of some statutory vehicle for reaching its destination. Interestingly, the provisions on which the court relies were not cited by the relators in their briefs.

What the court does is to mix up and combine sections 141.032 and 145.003 of the Election Code. In doing so, it equates the section 141.032(c) mandate to "reject an application" with a duty to declare a candidate ineligible under section 145.003. Yet, such a duty does not exist in section 145.003, and the statutory scheme makes clear that the rejecting of an application and the declaring of ineligibility are two entirely separate pieces in the electoral process. Section 145.003(a) expressly states that "a candidate may be declared ineligible *only as provided by this section*." Thus, section 141.032 has nothing to do with declaring ineligibility.

Of course, the majority has good reason for trying to muddle these two provisions. This court can issue a writ of mandamus only when the relator has a clear right to the relief sought such as when a public official refuses to perform a ministerial act or violates a duty imposed by law. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916 (Tex.1985); *Jessen Associates, Inc. v. Bullock*, 531 S.W.2d 593 (Tex.1975); *King v. Payne*, 156 Tex. 105, 292 S.W.2d 331 (1956). Nowhere does section 145.003 impose a duty to declare ineligibility. Therefore, section 145.003 cannot provide the court with authority for issuing a writ of mandamus. To circumvent this prob-

lem, the court reaches to the "shall reject" language of section 141.032(e) so that it can have some mandatory language as a foundation for the writ of mandamus. Yet, under the Election Code, it is too late for Meyer to reject McCorkle's application for a place on the ballot. The court then says that Meyer "must declare McCorkle ineligible." However, ineligibility is governed solely by section 145.003 and under this section Meyer has no mandatory duty to declare ineligibility. Therefore, this court cannot legitimately order anything done in connection with this matter at this time.

PHILLIPS, C.J., and COOK and HECHT, JJ., join in this dissent.

COOK, Justice, dissenting.

I join in Justice Spears' dissent because I do not believe that "at the time of election" modifies the ten-year requirement. Even if the majority were correct as to its construction of this provision, however, I would still dissent for other reasons. Accordingly, I write separately.

Today the majority deprives the people of Texas of a possible choice in the next election, and all for the sake of a ten-day gap. We should not allow such a technicality to work against the democratic process unless the constitution and the statutes make it painfully clear that there is no other way to proceed. In this case, there is another way, and it is mandated by the Election Code.

The Election Code states when a candidate is officially "elected." That date is not the date of the general election, but the date the final canvassing authority for the election completes the canvass for the office or measure involved in the contest. TEX.ELEC.CODE ANN. § 221.005 (Vernon 1986). The final canvass is "the canvass in which the official results of an election are determined." Id. at § 1.005(5). For the office of Justice of the Supreme Court, the final canvass is done by the governor. Id. at § 67.010 (Vernon Supp. 1990). The time for the canvass to be done by the governor is not earlier than the fifteenth or later than the thirtieth day after election day at the time set by the secretary of state. Id. at § 67.012 (Vernon Supp.1990).

In other words, the candidate is not elected until the votes are counted. No other rule makes sense. Anyone who has waited throughout a close election or witnessed a challenge to the count will agree. Anyone who has been elected as Justice of the Supreme Court knows that the Election Code's election date is the operative one, for justices may not be sworn in until after that date.

Under the Code's provisions, McCorkle is eligible. On the earliest possible date of canvassing, McCorkle will have been licensed ten years.

Contrary to the majority's statement, all parties did not agree that McCorkle will not have been eligible at the date of his election. At least one party timely and properly argued that McCorkle will achieve eligibility at the time of his election, as defined by the Election Code. I cannot think why the majority has given no credence to this argument. It is simple and correct on the law. It requires no inquiry into the constitution's grammatical structure. It does not require that we ignore the cases cited by the majority. None of those cases presented a time gap so minor that it was erased by the Code. Moreover, the Election Code argument allows us to follow our decision in *Brown v. Meyer*, 787 S.W.2d 42 (1990), which we delivered only one week ago.

In *Brown*, another candidate disqualification case, we considered the purpose of the constitutional provision before us, noting that we are required to "consider the evil to be remedied and the good to be accomplished" by constitutional provisions. *Id.*, (citing *Markowsky v. Newman*, 134 Tex. 440, 136 S.W.2d 808, 813 (1940)). Following that rule of construction, we allowed J.E. "Buster" Brown to remain on the ballot. The purpose of the provision before us today is to ensure that those who serve on the Supreme Court are qualified. TEX. CONST. art. VIII, 2, interp. commentary (Vernon 1955). To say that the ten-day gap

makes Judge McCorkle unqualified is to subvert the purpose of the constitution and to ignore our decision of one week ago.

To declare McCorkle eligible both comports with the Election Code and achieves the fairest result for the people of this state, for the candidate, and for the democratic process. Accordingly, I would deny the relief requested and let the people decide.