**Susan J. SCOLARO, Appellant,**

v.

**The STATE of Texas, ex rel. Bob JONES, Appellee.**

**Nos. 07–99–0064–CV, 07–99–0100–CV.**

Court of Appeals of Texas, Amarillo.

Aug. 5, 1999.

750

Craig, Terrill & Hale (Eric G. Walraven, H. Grady Terrill), Lubbock, for appellant.

Ralph H. Brock, Attorney at Law, Lubbock, John W. Smith, District Attorney Pro Tem, Odessa, for appellee.

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

JOHN T. BOYD, Chief Justice.

This is an appeal from a *quo warranto* case in which appellant Susan J. Scolaro (Scolaro) challenges her removal as judge of the County Court at Law No. 1 of Lubbock County by appellee the State of Texas, *ex rel.* Bob Jones (the State). In seeking Scolaro's removal from office, the State alleges that she did not meet the statutory requirements to serve in that capacity on November 3, 1998, the date of the general election. In response to competing motions, the trial court granted partial summary judgment for the State removing Scolaro from office. By doing so, he inferentially overruled Scolaro's motion for summary judgment. This order was severed from the remainder of the pro-

ceeding, making it final and appealable. Scolaro brought an appeal from that judgment and it is before us as case number 07–99–0064–CV.

The remaining issues concerning imposition of costs and a fine were tried March 17, 1999. As a result of that trial, the court imposed a fine of $2,500 on Scolaro and assessed costs against her. She has also taken an appeal from that judgment and it is before us in case number 07–99–0100–CV. The parties have briefed and argued both appeals together. We will likewise combine our consideration and disposition of both appeals.

This dispute has been before this court before. In *In re Jones,* 978 S.W.2d 648 (Tex.App.—Amarillo 1998) (orig.proceeding), relator Bob Jones, a write-in candidate for the office, sought to have this court issue a writ of mandamus commanding the Chairman of the Lubbock County Republican Party to administratively declare Scolaro ineligible to run in the November 3, 1998 general election. The challenge was based on Jones's claim that Scolaro did not satisfy the practice of law requirement imposed by Section 25.0014(3) of the Government Code. That statute requires that the judge of a county court at law

> be a licensed attorney in this state who has practiced law or served as a judge of a court in this state, or both combined, for the four years preceding election or appointment, unless otherwise provided for by law.

Tex. Govt.Code Ann. § 25.0014(3) (Vernon Supp.1999). It was undisputed that Scolaro was admitted to the practice of law in Texas in November 1984 and that she voluntarily assumed inactive status on June 14, 1989, pursuant to Section 81.052 of the Government Code. The question before us in that proceeding was whether Jones conclusively established that Scolaro did not meet the Government Code practice requirement.

Jones relied on the language of the statute and records from the Texas Supreme

Court and State Bar of Texas that Scolaro's status did not change to active until November 18, 1994, making her 15 days short of the statute's practice requirement. In response, and assertedly unable to locate documentation supporting her position, Scolaro primarily relied on her own affidavit that she mailed a request for reinstatement and payment by check on August 22, 1994, and that she resumed the practice of law on September 1, 1994.

■ In denying Jones's petition we concluded:

> ... the only requirements under § 81.052(d) for the change in membership from inactive to active status are 1) the inactive member's application and 2) the payment of required fees. Because the statute does not provide that restoration to active membership is subject to any discretion or determination by the clerk or the bar, we hold that when an inactive member sends an application for a change from inactive membership status and pays the required fees, that change in membership is effective, ipso facto, upon receipt of the application and payment to the bar. Because the bar records and supreme court records do not reflect when the application for membership change and payment of fees were received, we may consider, for the purposes of the proceeding before us, the member's affidavit that she mailed the request and sent the required fees to the State Bar. Thus, a question of fact exists regarding the date the application and payment of fees was received, which precludes the granting of mandamus relief. Additionally, we have noted that attached to the clerk's letter is a payment record which shows that on November 18, 1994, Scolaro was 'reinstated to the active rolls for '94,' which relator acknowledges, is a part of the official record. We judicially note that the State Bar fiscal year begins on June 1. Therefore, the clerk's statement that Scolaro 'was reinstated to the active rolls on November 18, 1994,' is not con-

clusive as to the effective date of the reinstatement. Consequently, [the party chairman's] failure to administratively declare Scolaro ineligible was not a failure to perform a ministerial duty and mandamus will not issue.

*Id.* at 653–54. In order to remove any question whether our holding in *Jones* on the requirements for a change in bar membership status from inactive to active is part of the "law of the case," we reiterate and expressly adopt that holding. *See Benham v. Benham,* 726 S.W.2d 618 (Tex. App.—Amarillo 1987, writ ref'd n.r.e.) (finding of venue fact in venue proceeding does not become the law of the case or bind the court or jury in a subsequent trial on the merits).

■ Before addressing the specific issues raised in this appeal, we note that the State's brief lists the Lubbock Avalanche–Journal as an intervenor. The record does not contain a petition in intervention, order striking the intervention, or other disposition of claims asserted by this party. The parties do not challenge the finality of the trial court's judgment and, because the second judgment before us was rendered after a trial on the merits, we may presume that the trial court intended to, and did, dispose of all parties and issues before it. *North East Independent School District v. Aldridge,* 400 S.W.2d 893, 897–98 (Tex.1966).

Scolaro now presents three challenges to the trial court's judgments. In her first and third issues, she challenges the judgment in case number 07–99–0064–CV and assigns error to the trial court's action in granting the State's motion for partial summary judgment and denying her motion for summary judgment. Her second issue applies to the judgment in case number 07–99–0100–CV and challenges the imposition of a fine. For reasons we later recount, we affirm the judgments of the trial court.

The standards by which we must review summary judgment are so well established

that an extensive recitation of them is unnecessary. It is sufficient to note that a movant's right to such a judgment requires them to establish that there is no genuine issue of material fact and they are entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). Evidence favorable to the non-movant will be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in their favor. *Id.* When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented. *Bradley v. State ex rel. White,* 990 S.W.2d 245 (Tex.1999). When faced with error in that circumstance, the reviewing court should render the judgment the trial court should have rendered. *Id.*

■ *Quo warranto* is an extraordinary remedy prosecuted by the State against a person who usurps or unlawfully holds a public office. Although ancient in origin, the action is now authorized and governed by chapter 66 of the Civil Practice and Remedies Code (Vernon 1997). Section 66.003 of that statute specifically authorizes a judgment removing the person from office, imposing a fine, and charging costs against them. These remedies are exclusive. *Newsom v. State,* 922 S.W.2d 274, 278 (Tex.App.—Austin 1996, writ denied).

In support of her first and third points, Scolaro presents four arguments. They are: 1) her payment of bar dues had retroactive effect to either the start of the bar year, or the date of her original request; 2) the doctrine of spoliation became applicable when the State Bar destroyed original correspondence concerning reactivation of her membership; 3) the statutory practice requirement contained in Section 25.0014(3) of the Government Code is not limited to the period immediately preceding the judge's election; and 4) the rules regarding reinstatement to active status are unconstitutionally vague.

### Retroactive Effect

■ Scolaro argues that her payment of bar dues for 1994 should be retroactive because there "is no clear reason" it should not be retroactive. In support she cites *Hill v. State,* 393 S.W.2d 901 (Tex. Crim.App.1965), in which a defendant challenged his criminal conviction on the fact that his appointed attorney was delinquent in payment of his bar dues at the time of trial. The court initially noted the bar rule at that time providing "all person not members of the State Bar are hereby prohibited from practicing law in this State." *Id.* at 903. In rejecting the appellant's argument and finding the attorney's subsequent payment of dues retroactive, the court held that a delinquency in payment of bar dues did not make them unlicensed to practice law in this state.

The State responds by citing the recent case of *Satterwhite v. State,* 979 S.W.2d 626, 627 (Tex.Crim.App.1998), a criminal prosecution of an attorney under Section 38.122 of the Penal Code who represented a client when his license had been suspended for nonpayment of dues. *Satterwhite* relied on Article III, Section 7(A) of the Texas State Bar Rules as support of the argument that his subsequent payment of bar dues and reinstatement were retroactive. That rule provides:

> When a member, who has been suspended for nonpayment of fees or assessments, removes such default by payment of fees or assessments then owing, plus an additional amount equivalent to one-half the delinquency, the suspension shall automatically be lifted and the member restored to former status. Return to former status shall be retroactive to inception of suspension, but shall not affect any proceeding for discipline of the member for professional misconduct.

State Bar Rules art. III, Section 7(A), reprinted in Tex. Govt.Code Ann., Title 2, Subtitle G, App. A (Vernon 1998). Based on the latter half of the last sentence, the court ruled that Satterwhite's subsequent payment and reinstatement did not absolve him of criminal liability for conduct committed during the time his license was suspended and noted that any attempt by the State Bar to negate the effect of the criminal statute would be unconstitutional. *Satterwhite*, 979 S.W.2d at 629. The court distinguished *Hill* on the basis that it dealt with a criminal defendant's claim of ineffective assistance of counsel based on their attorneys' right to practice law. *Id.*

The differences between the issues addressed in *Hill* and *Satterwhite* and the issues before us are significant. Both of those cases concerned administrative suspensions rather than attorneys voluntarily taking inactive status. *Hill* was also decided before the adoption of Section 7 of the State Bar Rules. That is significant because that section provides different standards for reinstatement from administrative suspensions and return from inactive status. In contrast to reinstatement from administrative suspensions governed by subsection A quoted above, return from inactive status is governed by subsection C, which provides: "[a]n inactive member may return to active status upon written application and payment of fees for the current year." *See also* Tex. Govt.Code Ann. § 81.052(d) (Vernon 1998). Unlike subsection A, subsection C contains no provision for retroactivity. This omission supports the conclusion that a change from inactive status is not retroactive. *See Laidlaw Waste Systems v. Wilmer*, 904 S.W.2d 656, 659 (Tex.1995). Moreover, the record contains the deposition testimony of Kathy Holder, the Membership Director of the State Bar, that the bar does not view a change in status as retroactive. Subsection A of Section 7 is never implicated because at no time during the 1994 bar year were Scolaro's dues delinquent. The evidence shows that she had already paid her 1994 bar dues at the inactive member rate of $50.

Scolaro next argues that even assuming her 1994 active membership dues were first paid in November, there is a genuine issue of fact as to the date she requested a return to active status and the subsequent payment should be retroactive to the date of that request. As support she cites cases in which our supreme court has held that payment of filing fees is retroactive to the date of the filing. *See Tate v. E.I. DuPont de Nemours & Co.*, 934 S.W.2d 83, 84 (Tex.1996); *Jamar v. Patterson*, 868 S.W.2d 318, 319 (Tex.1993). In those cases the court treated the documents as "conditionally filed" when tendered and the subsequent fee payment as finalizing the original filing. We find those cases inapplicable to the payment at issue.

■ With regard to documents filed in courts, a document is "filed" when it is tendered to the clerk. *Jamar*, 868 S.W.2d at 319. It is the act of tendering the document to the clerk that is of legal significance. The payment of a filing fee is merely security for costs. *Rodeheaver v. Alridge*, 601 S.W.2d 51, 54 (Tex.Civ.App.— Houston [1st Dist.] 1980, writ ref'd n.r.e.); Op. Tex. Att's. Gen. No. DM–459 (1997). Without such payment, the document is still treated as "conditionally filed." *Jamar*, 868 S.W.2d at 319. In contrast, the payment of membership dues is one of the two statutory prerequisites for a change from inactive to active status. Tex. Govt. Code Ann. § 81.052(d) (Vernon 1998); *In re Jones*, 978 S.W.2d at 653. Scolaro offers no policy reason or legislative history which would persuade us that we should imply into the plain language of the statute that a request for return to active status is "conditionally effective" until the dues payment is made. Kathy Holder's deposition suggested at least one reason it should not be so. Until an attorney satisfied both statutory requirements, the bar would respond to any requests concerning their status as inactive. Holder described the difficulty and confusion which would be the

result if the bar attempted to make changes in status retroactive. Finding no support for her argument, we hold that Scolaro's payment of her active bar dues in November 1994 did not have retroactive effect.

### Spoliation

 Scolaro next argues that the doctrine of spoliation is applicable to create a presumption that documents destroyed by the State Bar would have been favorable to her position. *See Trevino v. Ortega,* 969 S.W.2d 950, 952 (Tex.1998); *H.E. Butt Grocery Co. v. Bruner,* 530 S.W.2d 340, 344 (Tex.Civ.App.—Waco 1975, writ dism'd). It is undisputed that the State Bar routinely destroys original correspondence after one year. Scolaro argues that this doctrine of spoliation creates a presumption that the original correspondence would have shown that she satisfied the requirements for return to active status before November 3, 1994, thus precluding rendition of summary judgment against her. The State correctly notes that the doctrine of spoliation, as Scolaro seeks to rely on it, only applies to the conduct of parties.[1] *Brewer v. Dowling,* 862 S.W.2d 156, 159 (Tex.App.—Fort Worth 1993, writ denied) ("failure to produce evidence within a party's control" raises presumption); *H.E. Butt,* 530 S.W.2d at 343 ("Where a party is in possession of evidence").

It is clear that the State Bar is not a party to this proceeding. Although the State Bar is an administrative agency of the judicial branch, it is also a public corporation. Tex. Govt.Code Ann. § 81.011(a) (Vernon 1998). When the Texas Department of Public Safety and the Dallas County District Attorney are held not to be the same party for purposes of collateral estoppel, *see State v. Brabson,* 976 S.W.2d 182, 184 (Tex.Crim.App.1998), it is difficult to conceive how the State Bar could be considered to be a party to this

*quo warranto* proceeding brought by a special prosecutor in Lubbock County.

Even setting aside the fact that the destruction of any documents was done by a non-party, the State has also presented evidence which would rebut any presumption against it by showing that the destruction was not with a fraudulent intent. The facts before us are similar to *Ordonez v. M.W. McCurdy & Co., Inc.,* 984 S.W.2d 264 (Tex.App.—Houston [1st Dist.] 1998, no pet.), where the court held that evidence of destruction of a driver's log books after six months was part of a normal business practice, the presumption from spoliation was inapplicable. *Id.* at 273. Here, the evidence showed that it is the normal business practice of the State Bar to destroy original correspondence after one year and only retain electronic records of such correspondence. The documents pertaining to Scolaro were not singled out for destruction. Moreover, at the time of the destruction, there was no contemplation of litigation relevant to those records by the State Bar or the parties to this proceeding.

### Actual Practice Experience

Scolaro's third argument is that she met the practice requirement of Section 25.0014(3) because 1) the "intent" of the statute is that candidates have four years of legal experience, and 2) she was actually engaged in the practice of law for the four years preceding the election. We find these arguments without merit.

 It is well established that the purpose of statutory construction is always to ascertain legislative intent. *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997); *City of Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W.2d 273, 278 (1951). Courts must take statutes as they find them and must find a statute's intent in its language and not

---

**1.** In *Trevino,* the court noted that spoliation for conduct of a party is an evidentiary matter, not a separate cause of action. It de-

clined to decide if an independent claim for spoliation of evidence could be asserted against a non-party. 969 S.W.2d at 951, n. 1.

elsewhere. *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985). Additionally, every word in a statute must be presumed to have been used for a purpose and every word excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981).

■ The statute at issue provides that a candidate for a statutory county court must have "practiced law or served as a judge of a court in this state, or both combined for *the* four years preceding election or appointment." Tex. Govt.Code Ann. § 25.0014(3) (Vernon Supp.1999) (emphasis added). By its inclusion of the article "the" in this requirement, the legislature clearly specified which four years may be considered toward the practice requirement. Under the authority discussed above, this court is not free to ignore this restriction imposed by the legislature.

■ Scolaro's second argument under this contention is that she was actually engaged in the practice of law from September 1, 1994, without regard to her status as a member of the bar. She offers her own testimony that she studied law and handled legal matters for herself and her husband. Although she has not presented any description of these legal matters or documents generated in connection with these matters, for the purpose of summary judgment review, we accept these assertions as true.

Scolaro's argument fails to address the effect of Section 81.053(a) of the Government Code which provides that "[a]n inactive member may not practice law in this state." She relies instead on a letter sent by the membership department of the bar concerning inactive status. An examination of this letter shows that it does not support her contention. In a portion of the letter giving examples of activities which constitute the practice of law, thus precluding eligibility for inactive status, it states that services "rendered solely on behalf of a member's own personal inter-ests" are excluded. Scolaro's reliance on this letter offers no support for her position because it defines services rendered for one's own interest, which is what she asserts is the legal work she performed from September 1, 1994, as *not* constituting the practice of law. She fails to explain how her conduct would *not* constitute the practice of law for purposes of Government Code Section 81.053(a), but *would* be the practice of law under Section 25.0014(3).

In a related first argument, Scolaro seeks to distinguish the Texas Supreme Court case of *Sears v. Bayoud*, 786 S.W.2d 248 (Tex.1990). That case involved the eligibility of a candidate for that court under the constitutional requirement that a justice of that court must have been a practicing lawyer for at least ten years. It was undisputed that the candidate at issue was licensed less than ten years before the date of the election, but more than ten years before the date he would have taken office. *Id.* at 250. On the central issue before it, the court held that practice requirement must be satisfied by the date of the election, not merely the date on which he would have assumed the office. *Id.* at 252. The court expressly held the fact that the candidate was only a few days short of the practice requirement was of no legal significance. *Id.* at 250.

Scolaro argues that *Sears* is inapplicable because it concerned the date the candidate was originally licensed and it is undisputed that she was licensed in 1984. This argument is without merit. Two holdings from *Sears* are clearly applicable; first, that a candidate's eligibility must be determined as of the date of the election, and second, even when a candidate's practice experience is only a few days short of the position's requirement, a court may not disregard that deficiency as *de minimus*.

She argues that the case of *Ferris v. Carlson*, 314 S.W.2d 295 (Tex.Civ.App.—Dallas 1958) (orig.proceeding), is more analogous to the facts before us. *Ferris* involved an attorney running for district

judge. The local party committee determined that, although the candidate was licensed to practice law for the entire period, there was conflicting evidence on whether he was engaged in the practice of law for the year 1953, and it determined that he did not practice law that year and would not meet the statutory requirement. In response, the candidate brought a mandamus action against the committee in the appellate court. Holding that a fact question was presented, the court denied the petition. Scolaro argues that the evidence in the present case similarly presents a fact question on whether she practiced law from September 1, 1994. Only after presenting three pages in support of the applicability of *Ferris* does Scolaro acknowledge that the Texas Supreme Court granted mandamus in that case.[2] In reversing the opinion on which she relies, the supreme court held the party committee could properly look to the records of the supreme court concerning the candidate's status as a member of the bar but the question of whether his actual conduct constituted the practice of law was a mixed one of law and fact and the party committee had no authority to resolve it. 314 S.W.2d at 298.

Scolaro's argument assumes that the question before the trial court was one of fact, that is, whether she was engaged in the practice of law before November 3, 1994. This assumption is based on her belief that she could be engaged in the practice of law for the purpose of Section 25.0014(3) without regard to a grant authority from the State Bar of Texas. This assumption is incorrect. The State established that she could not have met the statutory practice requirement, regardless of her actual conduct in providing legal services because, under Section 81.053(a) of the Government Code, as a matter of law she was not authorized to practice law until she was reinstated to the active rolls of the State Bar, well after November 3, 1994.

## Constitutionality

 Scolaro's final argument is a constitutional challenge to the rules governing a change from inactive to active status. She argues the rules are so vague as to deprive her of due process. In support, she cites *General Tire, Inc. v. Kepple*, 917 S.W.2d 444, 453 (Tex.App.—Houston [14th Dist.] 1996), *reversed,* 970 S.W.2d 520 (1998), in which that court applied cases discussing vagueness of statutes to Rule 76a of the Rules of Civil Procedure. That opinion also noted the rule that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the individual case. *Citing United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). In other words, the statute or rule must be impermissibly vague as applied to the fact of the case, not merely vague as applied to a hypothetical set of facts.

As we noted in *In re Jones,* an attorney's return to active status is governed by Section 81.052(d) and article III, Section 7 of the State Bar Rules adopted pursuant to that statute. 978 S.W.2d at 653. Section 81.052(d) provides:

> An inactive member at his request may become an active member on application and payment of the required fees.

The State Bar Rules essentially mirror this language. In the course of her argument, it is clear that she does not challenge the requirements, rather her constitutional challenge is to an unwritten requirement that an attorney return their bar card.

We adhere to our holding in *In re Jones,* that the clerk of the supreme court and the State Bar have no authority to impose additional requirements without a change in the statute or rules. 978 S.W.2d at 653. However, Scolaro's argument fails for two reasons. First, she does not challenge a statute or rule. She has provided no au-

**2.** The supreme court's opinion does not ap- pear in Scolaro's table of authorities.

thority that a constitutional vagueness challenge may be asserted as to practices not embodied in a statute or rule. Second, there is no evidence that Scolaro's return to active status was delayed because of an attempt to impose any additional requirements. Any ruling we make on this issue would have no effect on the outcome of this case. Consequently, it would be advisory, and we may not render advisory opinions. *Camarena v. Texas Employment Com'n*, 754 S.W.2d 149, 151 (Tex. 1988).

Our review of each of the arguments advanced by Scolaro in support of her first and third issues convinces us that she has failed to show error in the trial court's rendition of partial summary judgment for the state or in denial of her motion for summary judgment. We overrule her first and third issues.

■ In her second issue, Scolaro assigns error to the trial court's imposition of a $2,500 fine. Our disposition of her first issue is also dispositive of her first argument under this issue, that imposition of the fine was improper because she was entitled to hold the office. She also argues the lack of any evidence to support the amount of $2,500.

The State responds by noting an absence of any authority that evidence is required to support the amount of a fine in a *quo warranto* proceeding. In closing argument at trial, the State recommended a fine of $2,500 "because she has put us through this and now Lubbock is going to have to replace her." From its comments, it is apparent the trial court followed this recommendation.

Texas cases discussing the imposition of fines in *quo warranto* proceedings are rare. In what is probably the earliest Texas case to discuss the issue, our supreme court in *Banton v. Wilson*, 4 Tex. 400 (1849), noted the origin of *quo warranto* as a criminal proceeding and that its evolution into a civil remedy, as embodied in what the court referred to as the statute

of Anne, included a change in the nature of the fine to be nominal only. *Id.* at 407. It also noted the inapplicability of the statute of Anne in Texas. *Id.*

The court next visited the issue in *State v. De Gress*, 53 Tex. 387 (1880), shortly after the legislature authorized *quo warranto* proceedings by statute in 1879. Addressing the issue of whether the proceeding was civil or criminal, the court noted the similarity of the new Texas statute to the statute of Anne and determined that, as a civil proceeding, only the imposition of a nominal fine was authorized. *Id.* at 397. In *Ball v. Merriman*, 245 S.W. 1012, 1014 (Tex.Civ.App.—Beaumont 1922), *reversed*, 116 Tex. 527, 296 S.W. 1085 (1927), the imposition of a one cent fine against the board of supervisors of Fresh Water Supply District No. 1 of Jefferson County was noted without discussion. Other courts to address the issue have not limited fines to nominal amounts. In *Standard Oil Co. v. Missouri*, 224 U.S. 270, 32 S.Ct. 406, 56 L.Ed. 760 (1912), the United States Supreme Court recognized the Missouri supreme court's authority to impose a $50,-000 fine in a *quo warranto* proceeding. *Id.* at 283, 32 S.Ct. 406.

The continued vitality of *State v. De Gress* under the current statute governing *quo warranto* proceedings presents interesting questions deserving of resolution. However, we are constrained to address the issues raised by the parties to this appeal. With regard to the imposition of a fine, Scolaro's challenge is to the sufficiency of the evidence supporting the trial court's award and not to its authority to impose a fine in excess of a nominal amount. Therefore, we do not address that question.

■ Although there was some discussion in the trial court of Lubbock County's expenses in prosecuting the action, there is authority that attorney's fees and expenses, in contrast to court costs, may not be recovered in a *quo warranto* proceeding, making that an improper measure. *See Aldrich v. State ex rel. Cox*, 658

S.W.2d 323, 328 (Tex.App.—Tyler 1983, no writ).

The legislature's omission of standards or limits for fines imposed under Section 66.003(3) in *quo warranto* proceedings suggests that it chose to leave the matter to the trial court's discretion. Viewing the record as a whole, we cannot say that the trial court's imposition of a fine of $2,500 was arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985) (discussing test for abuse of discretion). We overrule Scolaro's second point.

Finding no reversible error in the trial court's judgments, we affirm the judgments involved in these appeals.